PEOPLE v. RYCZEK.

1. HOMICIDE—VOLUNTARY MANSLAUGHTER.

Voluntary manslaughter is the killing of another intentionally, but in a sudden heat of passion due to adequate provocation, and not with malice.

2. SAME—INVOLUNTARY MANSLAUGHTER.

Involuntary manslaughter is the killing of another without malice and unintentionally but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.

For authorities discussing negligent homicide generally, see note in 61 L. R. A. 277.

On homicide by negligent operation of automobile, see notes in 30 L. R. A. (N. S.) 458; 33 L. R. A. (N. S.) 403; L. R. A. 1918B, 954.

3. INDICTMENT AND INFORMATION — MANSLAUGHTER — STATUTORY
SHORT FORM INSUFFICIENT TO CHARGE INVOLUNTARY MAN-
SLAUGHTER.

> The statutory short form of charging manslaughter is
> not sufficient to charge involuntary manslaughter, but the
> particular facts upon which the charge rests must be set
> up in the information.

4. SAME—INVOLUNTARY MANSLAUGHTER—SUFFICIENCY OF INFORMA-
TION.

> Where the second count of an information charging man-
> slaughter contained the facts upon which the people relied,
> informing defendant that he was charged with involuntary
> manslaughter, the fact that the first count charged man-
> slaughter in the statutory short form was not prejudicial,
> although by reason thereof it became necessary for him
> to prepare his defense upon both counts.

5. HOMICIDE — INVOLUNTARY MANSLAUGHTER — EVIDENCE — SUFFI-
CIENCY.

> In a prosecution for involuntary manslaughter, evidence,
> *held*, sufficient to justify the finding of the jury that de-
> fendant was guilty of gross negligence.

6. SAME—EVIDENCE—ADMISSIBILITY.

> In a prosecution for involuntary manslaughter for the
> killing of a child by running over it with an automobile,
> testimony as to the tracks made by the automobile near
> the place of the accident, *held*, admissible although the
> observations were not made until 24 hours later, where it
> appeared that there had been no change in the *locus in quo*.

Exceptions before judgment from Saginaw; Snow
(Ernest A.), J.    Submitted June 19, 1923.    (Docket
No. 99.)    Decided July 19, 1923.

Michael Ryczek was convicted of involuntary man-
slaughter.    Affirmed.

*Purcell & Tessin*, for appellant.

*Wilber M. Brucker*, Prosecuting Attorney, and *R.
L. Crane*, Assistant Prosecuting Attorney, for the
people.

BIRD, J.   Defendant was convicted of involuntary manslaughter in the Saginaw circuit court and he files exceptions in this court before sentence.   Defendant was a resident of Bay City.   On Sunday, July 13, 1919, in company with four companions, he started in his Ford automobile to drive to Saginaw over an improved north and south highway.   After proceeding some distance the plan was changed and they concluded to return to Bay City.   The next four corners which were reached defendant drove past the corners a short distance and then backed west into an east and west road.   As he started to go forward to join the north and south road again he observed a car coming rapidly from the south, and in order to avoid the car he did not turn in on the north and south road but proceeded directly across it to a distance of upwards of 100 feet.   About 55 feet east of the north and south highway he ran into a cart in which a boy was hauling his five months' old sister.   The collision resulted in tipping the cart over and subsequently one wheel of the automobile ran over the baby and injured it so badly that it died within two hours thereafter.

A complaint was made against defendant for manslaughter.   The offense was charged in the short form prescribed by the statute (3 Comp. Laws 1915, § 15739).   When arrested and taken before the justice he waived examination and was held for trial. In the circuit court the prosecutor filed an information charging manslaughter in the statutory form, and added the following count:

"And further the said Michael Ryczek at time and place aforesaid, feloniously, negligently and wilfully did run and operate an automobile against, over and upon the said Bernice Histed, a child five months of age, bruising, wounding and injuring her there, then and thereby so that she languished and suffered for two hours and then died as a result of said injuries, the said injuries being inflicted there and then by

said defendant while under the influence of alcoholic, intoxicating liquors, negligently and without excuse, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan."

Defendant's counsel raise the question in effect that defendant was informed against for voluntary manslaughter and tried and convicted for involuntary manslaughter.    It appears that after the jury was sworn defendant's counsel called the court's attention to the fact that the counts charged different offenses and the following answer was made by the court and prosecutor:

"*The Prosecutor:* The second proposition, so the people's position may be made plain to the defendant, it is the intention of the people to charge the defendant with manslaughter.    The second count simply amplifies and refers to the matter of intoxication or the use of liquor, which, in my judgment, was only fair to the defendant, but was not necessary.    As part of the evidence it would not be necessary to charge other than he did wantonly kill, etc.

"*The Court:* This second part may be regarded as surplusage as far as the legality of the information is concerned."

This question was raised several times during the trial upon questions of the admission of testimony. At the close of the people's testimony defendant asked for a directed verdict because the case made did not establish voluntary manslaughter.    This motion was overruled and the trial judge subsequently presented the case to the jury upon the question of involuntary manslaughter.

1. There appears to be some disagreement between counsel whether the evidence made out a case of voluntary or involuntary manslaughter.    These terms are well defined, as follows:

"Voluntary manslaughter is the killing of another intentionally, but in a sudden heat of passion due to

adequate provocation, and not with malice." 21 Cyc. p. 736.

"Involuntary manslaughter is the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." *Id.* p. 760.

There is no claim by the people that defendant intentionally ran against and over the child. The claim is that while doing a lawful act in driving his automobile he did it in such a negligent manner that it amounted to gross negligence on his part. This would clearly bring the case within the definition of involuntary manslaughter.

The question then arises whether the statutory short form of charging manslaughter was sufficient in a case of involuntary manslaughter. This question was discussed at some length in *People* v. *Olmstead,* 30 Mich. 431, and it was there held that in charges of involuntary manslaughter the particular facts upon which they rest must be set up in the information. It was said in that case:

"But where the offense of manslaughter was involuntary homicide, and involved no assault, but arose out of some negligence or fault from which death was a consequential result, and sometimes not a speedy one, the ordinary forms were deficient, and the indictment had to be framed upon the peculiar facts, and could convey no adequate information without this. See 2 Bishop's Cr. Proced. § 538."

The court again considered the question in *People* v. *Townsend,* 214 Mich. 267 (16 A. L. R. 902). In the opinion of Mr. Justice WIEST it was said:

"To make the information for involuntary manslaughter good it must allege that the accused was in the commission of some unlawful act or negligently

doing some act lawful in itself, or by the negligent omission to perform a legal duty, and that death resulted therefrom.    The distinction between involuntary manslaughter committed while perpetrating an unlawful act not amounting to a felony, and the offense arising out of some negligence or fault in doing a lawful act in a grossly negligent manner and from which death results, must be kept in mind upon the question of pleading.    In the former case it is sufficient to allege the unlawful act with sufficient particularity to identify it, and then to charge that as a consequence the defendant caused the death of the deceased, and there is no need to aver in detail the specific acts of the accused; but in case of manslaughter committed through gross or culpable negligence, while doing a lawful act, the duty which was neglected or improperly performed must be charged as well as the acts of the accused, constituting failure to perform or improper performance."

The charge proven against defendant being one of involuntary manslaughter, we must conclude that it was necessary to set out in the information the acts of negligence upon which it was based.    The idea back of this rule is to inform the defendant with what he is charged so that he will be enabled to prepare his defense, and the question arises, Was defendant in this case informed what acts of negligence would be claimed by the prosecutor?    The information was filed October 27th and the trial did not take place until the following January.    During that time defendant was informed that he was charged with manslaughter and he was advised by the second count of the facts upon which the people would rely.    While it is true the practice was not strictly complied with, it does not appear how defendant was in any wise prejudiced in making his defense.    Up to the date of trial defendant was confronted with both counts and these two counts advised him what he would have to meet. He, of course, did not know which count the prosecutor would elect to stand on if driven to an election.    In

view of this it was necessary for him to prepare upon both counts.

The question of his conduct in driving the car, and the care which he exercised and all the circumstances were gone into fully by both parties and we are unable to see how defendant would have been in any better position if the two counts had been consolidated into one in the first instance.

2. It is argued that the facts and circumstances presented were not sufficient to justify the jury in finding defendant guilty of gross negligence. We are unable to agree with counsel in this contention. Defendant was driving his automobile upon a public highway without keeping a lookout as to where he was going. Two children were walking along in a westerly course on the south side of a deep ditch 10 feet across the top, hauling their baby sister in a cart. Alongside of this ditch was a path used by foot travelers, and defendant had his left wheel in this path, leaving practically no room between the ditch and the machine. Had defendant given the most casual glance ahead of him he would have observed the children approaching. When it was shown that defendant drove his automobile down this public highway without observing where the machine was going, and taking no note of those who were passing in the opposite direction, it shows such a thoughtless disregard of consequences, as affecting the life and property of others, that a jury were well within their province in finding that such conduct was gross negligence. 29 C. J. p. 1155, and cases.

But it is argued, in extenuation, that the automobile was going only four or five miles per hour. In this case the negligence complained of did not consist in excessive speed, but in defendant's utter indifference to consequences in running his automobile without observing what the ordinary driver does, and must,

observe for his own safety and the safety of others. After he passed over the north and south highway there was nothing to distract his attention, no one on the highway save these three children. The wonder that these facts create in the mind of the average man is how defendant could have avoided seeing them. The case was clearly one for the jury.

3. Exception is also taken to the admission of the testimony of the under-sheriff as to the tracks made by the automobile in the highway near the place where the accident occurred. It appeared that the observations were made 24 hours after the accident. The testimony showed that the cross road was a dirt road; that the tracks made by the automobile were still plain. That no other automobile tracks had been over that part of the road, but that there were some wagon tracks. This testimony showed that the left wheel of the automobile was in the foot path about 20 inches from the ditch. It also appeared that the broken cart lay where it was wrecked. We think it fairly appears that there had been no such change in the *locus in quo* as to make the testimony inadmissible.

Had the two counts of the information been merged into one before filing, the rules of pleading would have been complied with. The two counts, however, advised defendant what he would be called upon to meet. The questions tried out were the same as though the information had been regular. Upon the whole record it does not appear to us that there has been any miscarriage of justice. In view of this we are of the opinion that the provisions of section 14565 of the Compiled Laws of 1915 should be applied, and the judgment of conviction affirmed.

WIEST, C. J., and FELLOWS, MCDONALD, SHARPE, MOORE, and STEERE, JJ., concurred.

CLARK, J. I concur in affirming for the last reasons stated.