PEOPLE v DATEMA

Docket No. 97758. Argued December 7, 1994 (Calendar No. 8). Decided May 16, 1995. Rehearing denied 449 Mich 1206.

Gregory L. Datema was convicted by a jury in the Kent Circuit Court, Donald A. Johnston, J., of involuntary manslaughter that resulted from slapping his wife with an open hand. He subsequently was convicted as a second-felony offender. The Court of Appeals, MARILYN KELLY, P.J., and MacKENZIE and NEFF, JJ., affirmed in an unpublished opinion per curiam, finding that even if an assault and battery that resulted in death was not committed recklessly or with gross negligence, the crime is common-law involuntary manslaughter (Docket No. 119187). The defendant appeals.

In an opinion by Justice BOYLE, joined by Justices RILEY, MALLETT, and WEAVER, the Supreme Court held:

If an assault and battery is committed with a specific intent to inflict injury and causes unintended death, the actor at least may be found guilty of involuntary manslaughter.

1. Involuntary manslaughter is a catch-all concept including all manslaughter not characterized as voluntary. At common law, if an unlawful act was inherently wrong (malum in se), the only mens rea required was that of the underlying act. Michigan law provides that where a defendant commits an unlawful act (malum prohibitum) or a lawful act executed negligently that causes death, involuntary manslaughter may be premised on criminal negligence. If the crime committed was malum prohibitum, the defendant is not guilty of murder or manslaughter unless the act was committed carelessly and in a manner that manifests a reckless disregard of human life. This objective standard is met if the unlawful act is performed under circumstances that supply an intent to do wrong and inflict some bodily injury. Further, there must be a necessary connection between the unlawful act and the resulting death.

2. Common-law assault and battery was not an inherently dangerous act. The mens rea was a subjective intent to do wrong, and the underlying misdemeanor, though malum in se, did not require an intent to injure. If death occurred during the commission of the act, the underlying misdemeanor supplied the mens rea for involuntary manslaughter. In this case, the

issue is whether the charge to the jury permitted a finding of criminal culpability on the basis of the mens rea required for the common-law misdemeanor.

3. Unlike the felony-murder rule, in which no causal connection was necessary between the underlying felony and a death, the misdemeanor-manslaughter· rule requires a finding by a jury beyond a reasonable doubt that there was a direct and proximate connection between the underlying crime and the resulting death. When the underlying misdemeanor is an assault and battery, conviction of involuntary manslaughter is not permitted on the basis of an intent to commit common-law assault and battery; the jury must find beyond a reasonable doubt that the defendant specifically intended to injure the victim. Liability is not imposed solely on the basis of the bad result. It is logical that if an assault and battery causes death rather than serious injury, the penalty should be increased beyond aggravated battery.

4. The mens rea of manslaughter may be either criminal negligence or intent to injure in an assault and battery. Criminal or gross negligence lies between the extremes of intention and negligence. As with intention, the actor realizes the risk of the behavior and consciously decides to create that risk. As with negligence, the actor does not seek to cause harm, but is simply recklessly or wantonly indifferent to the results. Lack of actual or imputed intent to commit an act may absolve the actor from criminal liability. In some cases, however, criminal negligence may be used as a substitute for criminal intent. Instructing the jury in an assault and battery misdemeanor-manslaughter prosecution, that it must find an intent to injure the victim, is a more stringent standard than allowing a conviction on the basis of gross negligence. Gross negligence is only necessary if an intent to injure cannot be established.

5. An assault and battery committed with the intent to injure or in a grossly negligent manner that proximately causes death is involuntary manslaughter. Unlike murder, involuntary manslaughter contemplates an unintended result and thus requires something less than an intent to do great bodily harm, an intent to kill, or the wanton and wilful disregard of its natural consequences. The intent to injure in an assault and battery or gross negligence strikes the appropriate balance. Where an actor knows of the danger to others and has acted with the intent to injure another, the conduct is advertent, and the actor is guilty of subjective fault. Intent is not implied in law from commission of a mere assault and battery. Intent to injure must be found by the jury beyond a

reasonable doubt. Where an actor knows of the danger to others that might follow from an act or failure to act, and wilfully disregards the consequences by failing to use the care that a reasonable person would have used in the circumstances, the negligence is also advertent and wilful, but the mens rea is objective.

Affirmed.

Justice CAVANAGH, joined by Chief Justice BRICKLEY, and Justice LEVIN, dissenting, stated that the jury instructions did not provide a valid basis for a conviction of involuntary manslaughter, and the defendant's conviction should be reversed. The common-law unlawful-act misdemeanor-manslaughter rule should be abrogated, and gross negligence recognized as the mens rea standard for all common-law forms of involuntary manslaughter.

It is inherently unjust to presume the existence of the mens rea for murder merely on a showing of the mens rea required for an underlying felony. Liability for murder may be imposed only on an independent showing that the defendant had the mens rea for murder. To hold a defendant accountable for involuntary manslaughter on the basis of gross negligence requires a showing that the defendant wilfully disregarded not just a high risk of injury, but a high risk of death or serious bodily injury. Because the context will always be a homicide in a prosecution for involuntary manslaughter, the pertinent risks under this standard will always be death and serious bodily injury.

Imposing a uniform gross negligence standard would not preclude the possibility of an involuntary-manslaughter conviction of a defendant who commits an assault and battery resulting in death. Depending on the circumstance, proof of a specific intent to injure may also manifest a wilful disregard of a high risk of death or serious bodily injury. That would not be true in all cases, however, making it inappropriate to conclusively presume the existence of gross negligence. If a defendant is not shown to have been grossly negligent with respect to human life, but is shown to have had a specific intent to injure, and death proximately resulted from his acts, the defendant would not be allowed to escape all punishment.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

State Appellate Defender (by *Amy Neville*) for the defendant.

Boyle, J. We granted leave to consider whether the misdemeanor-manslaughter rule[1] should be abandoned in light of the change in Michigan's homicide law resulting from this Court's opinion in *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980). After careful consideration of the record, we decline the invitation to decriminalize responsibility for a death found to have been caused in fact by a person who struck his wife "a powerful blow" with the specific intent to injure her. As *Aaron* required proof of malice from the circumstances surrounding a felony to find second-degree murder, the instruction in this case required proof of intent from the circumstances surrounding the misdemeanor.

When an intent to injure is found and the act results in an unintended death, at a minimum, a charge of involuntary manslaughter is appropriate because it criminalizes unintended death with a culpable state of mind that is less than murder. The result is consistent with the rationale of *Aaron* that a jury should not be required to equate the intent to commit the common-law offense of assault and battery with a person-endangering state of mind. The jury was not instructed that criminal liability could be based on the mens rea of common-law assault and battery, a volitional unpermitted act. The instruction given required a finding of a specific intent to injure, from all the evidence, not simply an intent to commit the crime of assault and battery as it was defined at common law.

[1] The rule provides that, if death occurs as a result of an unlawful act, not amounting to a felony or naturally tending to cause death or serious injury, the person who committed the unlawful act is guilty of involuntary manslaughter.

The trial court incorporated the specific intent requirement of *People v Johnson*[2] and instructed the jury that in order to find defendant guilty of involuntary manslaughter, the jury must find that "at the time of the battery the Defendant either intended to injure Pamela Datema or intended to place her in reasonable fear or apprehension of receiving an immediate battery or contact."[3] The verdict of the jury necessarily credited the testimony that defendant had delivered a powerful blow with a culpable state of mind: a specific intent to injure. Involuntary manslaughter liability (at least) is proper.[4] Applying the concept of gross negligence to an assault with intent to injure is inherently contradictory.

One who commits an act, which is only made wrong by statute, is grossly negligent if he disregards the likelihood of injury or death to another. Such a person has the mens rea akin to the wilful doer of wrong. However, " ' "The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that, instead of affirmatively wishing to injure another, he is merely willing to do so. The difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does so or not." ' " *Burnett v City of Adrian,* 414 Mich 448, 463; 326 NW2d 810 (1982), quoting *Atchinson T & S F R Co v Baker,*

---

[2] 407 Mich 196; 284 NW2d 718 (1979).

[3] An assault at common law does not involve a specific intent to injure.

[4] In this case we use the term "injure" to include either physical injury or the mental injury occasioned by the fear or apprehension of receiving a battery. Defendant does not contest that he slapped his wife, that he intended only to place her in apprehension, or that the blow was an accident. We express no opinion regarding whether the intent to physically injure encompasses a more culpable state of mind than the intent to mentally injure through placing one in fear of a battery.

79 Kan 183, 189-190; 98 P 804 (1908) (citations omitted).

I

In the early morning hours of December 22, 1988, defendant and his wife, Pamela Datema, were sitting in their living room with two friends. All four had been smoking marijuana and both defendant and his wife had been drinking throughout the evening.

As the evening wore on, the conversation turned to the topic of previous romances, and the defendant and his wife began to argue about various paramours with whom they had slept. During the argument, Mrs. Datema started to rise from her chair, claiming to have had sexual intercourse with other men in front of defendant's sons. As she rose, defendant slapped her once across the face with an open hand. Mrs. Datema slumped back into her chair, screamed that she hoped defendant would "go to Florida and stay there," then slipped from the chair onto the floor. Initially, defendant and the two others present in the room thought that Mrs. Datema had passed out from drinking too much but, after five to ten minutes, they became concerned and tried to wake her. When they were unable to do so, they called an ambulance. Mrs. Datema never regained consciousness and died soon after.

The medical examiner testified that Mrs. Datema had a blood-alcohol level between 0.03 and 0.05 percent. He stated that death was caused by a tear in an artery in the head that occurred as a result of defendant's blow.[5] Although the three

[5] Most people, when slapped, reflexively stiffen their necks and avoid serious injury. Occasionally, however, when a person is intoxicated, the reflexes do not react quickly enough, and a blow could

eyewitnesses called by the prosecution testified that defendant had slapped his wife once with an open hand and that the slap was not a hard one, the medical examiner testified that to cause death, even under the circumstances, the blow had to have been a powerful one and "would have to be with probably all the force that one could muster."

After the defense presented its case, defense counsel requested that the jury be instructed consistent with the jury instruction that defines the mens rea element of involuntary manslaughter[6] exclusively in terms of gross negligence.[7] The trial

result in a tearing. Generally, a higher blood-alcohol level is necessary, but the ingested marijuana, which was not able to be tested, was undoubtedly a contributing factor.

[6] CJI2d 16.10 states:

Involuntary Manslaughter
(1) [The defendant is charged with the crime of/You may also consider the lesser charge of] involuntary manslaughter. [Murder is reduced to involuntary manslaughter if the defendant did not intend to kill or did not knowingly create a very high risk of death, but instead acted with unreasonable disregard for life.] To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
(2) First, that the defendant caused the death of [name deceased], that is, that [name deceased] died as a result of [state alleged act causing death].
[Use (3) when gross negligence is alleged without reference to a misdemeanor offense:]
(3) Second, in doing the act that caused [name deceased]'s death, the defendant acted in a grossly negligent manner.
[Use (4) in misdemeanor situations:]
(4) Second, when doing the act that caused [name deceased]'s death, the defendant committed an unlawful act that was naturally dangerous to human life, that is, an act that was grossly negligent of human life.
[(5) Third, that the defendant caused the death without lawful excuse or justification.]

[7] CJI2d 16.18 states:

(1) Gross negligence means more than carelessness. It means willfully disregarding the results to others that might follow from an act or failure to act. In order to find that the defendant

judge refused defense counsel's request, modified the instruction, and charged the jury that, to prove involuntary manslaughter, the prosecution would have to prove beyond a reasonable doubt that the defendant committed an assault and battery on Mrs. Datema with intent to injure her, that she died, and that the cause of her death was defendant's assault and battery.[8] The court ex-

was grossly negligent, you must find each of the following three things beyond a reasonable doubt:

(2) First, that the defendant knew of the danger to another, that is, he knew there was a situation that required him to take ordinary care to avoid injuring another.

(3) Second, that the defendant could have avoided injuring another by using ordinary care.

(4) Third, that the defendant failed to use ordinary care to prevent injuring another when, to a reasonable person, it must have been apparent that the result was likely to be serious injury.

[8] In pertinent part, the precise wording of the instruction is as follows:

A person commits the crime of involuntary manslaughter if he unintentionally kills another without malice in the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm. The Defendant pleads not guilty to this charge.

To establish his guilt of the charge, the prosecution must prove each of the following elements to your satisfaction beyond a reasonable doubt: first, that Pamela Datema died on or about December 22nd, 1988; second, that prior to her death the Defendant, Gregory Laurence Datema, committed an assault and battery upon Pamela Datema; third, that this assault and battery by the Defendant, Gregory Laurence Datema, caused the death of Pamela Datema.

Now, the second element of the crime of involuntary manslaughter is that the Defendant committed an assault and battery against Pamela Datema. To establish that the Defendant committed the crime of assault and battery against Pamela Datema, the prosecution must prove the following elements to your satisfaction beyond a reasonable doubt: first, that the Defendant committed a battery upon Pamela Datema. A battery is any forceful or violent touching of the person or something closely connected with the person by the Defendant or by some substance or object put in motion by the Defendant. The touching essential to constitute a battery must be intended by the Defendant, that is, not accidental, and it must be

plained the modification of the charge as encompassing both the mens rea of the underlying misdemeanor and the requirement of specific intent. The court specifically charged the jury with regard to the defendant's lack of specific intent due to drunkenness and on self-defense.[9]

The jury convicted defendant of involuntary manslaughter. Defendant was convicted as a second-felony offender[10] and sentenced to 7 to 22½ years in prison. Defendant filed an appeal, contending that, if the unlawful act that results in death is not committed recklessly or with gross negligence, the crime should no longer be recognized as a form of common-law involuntary manslaughter. The Court of Appeals disagreed and affirmed the decision of the trial court in an unpublished opinion. On June 30, 1994, we granted leave to appeal.[11]

II

In Michigan, the penalty for manslaughter is codified, but the definition is left to the common law. *People v Stubenvoll,* 62 Mich 329, 331; 28 NW 883 (1886). As noted by this Court in *People v McMurchy,* 249 Mich 147, 162; 228 NW 723 (1930),

---

against the victim's will. It is not necessary, however, that the touching result in any injury.

Second, that at the time of the battery the Defendant either intended to injure Pamela Datema or intended to place her in reasonable fear or apprehension of receiving an immediate battery or contact.

Now, I instruct you that the crime of assault and battery requires proof of a specific intent.

[9] The judge also instructed the jury on the offenses of assault and infliction of serious injury, MCL 750.81a; MSA 28.276(1), and assault and battery. MCL 750.81; MSA 28.276.

[10] Defendant's prior felony conviction was for malicious destruction of property in a building.

[11] 445 Mich 935.

"The law of manslaughter as it exists today has been adopted from the old English common law."

Common-law manslaughter has two broad categories: voluntary and involuntary. *People v Townes,* 391 Mich 578, 589; 218 NW2d 136 (1974); *People v Carter,* 387 Mich 397, 418; 197 NW2d 57 (1972). These two categories entail distinct elements and apply in different circumstances, but are often misapplied. Confusion is present because "Michigan courts, ours included, have been less than precise in the use of language denoting voluntary or involuntary manslaughter." *People v Beach,* 429 Mich 450, 477, n 13; 418 NW2d 861 (1988).

To clarify this distinction, it is helpful to note some basic common-law definitions. Common-law manslaughter is "any homicide which is neither murder nor innocent homicide, and such a killing may be either intentional or unintentional." Perkins & Boyce, Criminal Law (3d ed), p 83. Voluntary manslaughter is any killing with a person-endangering state of mind that is neither murder nor innocent homicide, or an unlawful homicide with a person-endangering state of mind that would be murder in the absence of mitigation. Voluntary manslaughter

> includes all homicides whether intentional or unintentional which are committed with a person-endangering-state-of-mind and are not justified or excused but are perpetrated under circumstances of recognized mitigation. [*Id.* at 104.]

Involuntary manslaughter is a catch-all concept including all manslaughter not characterized as voluntary:

> Every unintentional killing of a human being is

involuntary manslaughter if it is neither murder
nor voluntary manslaughter nor within the scope
of some recognized justification or excuse. [*Id.* at
105.]

Thus, at common law,

[w]here loss of life has been neither intended nor
the result of any other sort of person-endangering-
state-of-mind, the killing will be excused if he who
caused it was not engaged in any unlawful activity
at the time and was free from negligence. [*Id.*]

To this clear statement must be added the caveat
that led to our grant of leave in this case. At
common law, if an unlawful act was malum in se,
inherently wrong, the only mens rea required was
the mens rea of the underlying act.

We wish to be clear in this case that the crime
charged is involuntary manslaughter and the in-
struction given did not define assault and battery
as it was defined at common law. At common law,
the mens rea requirement for assault was attempt
to commit a battery or an intentional placing of
another in immediate apprehension of a battery;
battery was included within the definition of crimi-
nal assault. Thus, where a death resulted uninten-
tionally from an assault and battery, involuntary
manslaughter had been committed although the
defendant intended merely to frighten the victim.
[*Id.* at 175.]

A

In 1923, this Court defined involuntary man-
slaughter as

the killing of another without malice and uninten-
tionally, but in doing some unlawful act not

amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty. [*People v Ryczek,* 224 Mich 106, 110; 194 NW 609 (1923).]

This definition sets forth three different theories giving rise to involuntary manslaughter liability. These theories are not mutually exclusive, and, under the proper circumstances, multiple theories may be appropriate.

In *People v Barnes,* 182 Mich 179; 148 NW 400 (1914), the Court dealt with involuntary homicide caused by culpable negligence arising from a situation in which the defendant, allegedly driving in violation of the speed limit, struck a pedestrian. The Court expressly distinguished the situation before it from *People v Abbott,* 116 Mich 263; 74 NW 529 (1898), observing that *Abbott* was a situation involving a person who, while committing an unlawful act dangerous to human life, accidentally killed another. That person is "guilty of manslaughter at least, even though the act was not unlawful at common law." 182 Mich 198.

However, where the theory is a lawful act carelessly performed,

the carelessness must have been gross, implying an indifference to consequences; . . . [i]t means wantonness and disregard of the consequences which may ensue, an indifference to the rights of others that is equivalent to a criminal intent. . . . Therefore gross negligence is criminal, and within limits supplies the place of affirmative criminal intent. [*Id.* at 198-199.]

In *People v Campbell,* 237 Mich 424, 428; 212 NW 97 (1927), a case involving a charge of negligent homicide with a vehicle, the Court reiterated that

one is not criminally responsible for death from negligence unless the negligence is so great that the law can impute a criminal intent. If death issues from negligence which shows a culpable indifference to the safety of others, the negligence is said to be gross or wanton or wilful, and is equivalent to criminal intent, a necessary element of every common-law crime.

Thus, the law of Michigan has long provided that where a defendant commits an unlawful act that is malum prohibitum or a lawful act executed negligently that causes death, involuntary manslaughter may be premised on criminal negligence.[12] If the crime committed was malum prohibitum,[13] the defendant is "not guilty of murder, nor is he guilty of manslaughter unless he commits the act carelessly and in such a manner as manifests a reckless disregard of human life." *People v Pavlic*, 227 Mich 562, 566; 199 NW 373

---

[12] The dissent cites five cases in which this Court has explained the gross negligence standard. See *post* at 612-613, citing *Barnes, supra* at 198; *Ryczek, supra* at 112; *People v Pavlic*, 227 Mich 562, 566; 199 NW 373 (1924); *Campbell, supra* at 428; and *People v Orr*, 243 Mich 300, 307; 220 NW 777 (1928). The dissent contends that "[t]hese descriptions must be viewed in their proper context," *post* at 613, and asserts that it is improper under these decisions to premise manslaughter liability on the intent to injure alone; defendant must intend to cause serious injury or death. Properly read in context and in light of the crimes that each of the aforementioned cases was addressing, it is clear that these cases, while properly defining the definition of gross negligence, are not applicable in this case. Assault and battery is a malum in se crime; each of the cases cited by the dissent was a malum prohibitum offense. See *Barnes* (death caused by negligent operation of an automobile in excess of the speed limit); *Ryczek* (death caused by negligent operation of an automobile); *Pavlic* (death caused by furnishing intoxicating liquor in violation of a statute); *Campbell* and *Orr* (death caused by negligent operation of an automobile).

[13] An act is malum prohibitum if it is an

act which is not inherently immoral, but becomes so because its commission is expressly forbidden by positive law . . . . [Black's Law Dictionary (6th ed), p 960.]

(1924). This is the standard of objective mens rea
applicable to acts malum prohibita, which includes
any matter forbidden by statute but not otherwise
wrong.[14] The objective standard, reflected in the
Criminal Jury Instructions, CJI2d 16.10(3), is
taken from *People v Orr,* 243 Mich 300; 220 NW
777 (1928). In *Orr,* in the context of an involuntary
manslaughter prosecution arising from a motor
vehicle accident, the Court stated that negligence
is

characterized chiefly by inadvertence, thoughtless-

---

[14] The dissent erroneously construes the negligence standard cre-
ated to protect individuals from criminal liability for acts of simple
negligence to absolve a person of liability for death resulting from
injury specifically intended. Indeed, as both *People v Pavlic* and
*People v Orr* illustrate, intent to injure and reckless disregard for the
safety of others are the blameworthy states of mind of involuntary
manslaughter arising from acts that are malum prohibitum and not
inherently wrong. In discussing the effect of *Pavlic* on the gross
negligence standard for involuntary manslaughter, the dissent quotes
the *Pavlic* Court as stating:

"[N]or is he guilty of manslaughter unless he. commits the act
carelessly and in such a manner as manifests a *reckless disre-
gard of human life.*" [Emphasis added.] [*Post* at 612.]

It should be obvious from this passage that intent to harm, of which
the *Pavlic* Court spoke, can be the intent neither to do great bodily
harm nor to cause death because that intent would be the malice for
second-degree murder. Intent to injure is one prong of the mens rea
requirement for malum prohibitum manslaughter. A reckless disre-
gard for the life or safety of others is the other.

Applying these principles to the instant case the conviction
cannot be sustained unless the unlawful act of selling and
giving intoxicating liquor to the deceased was committed under
circumstances showing *an intent to inflict injury* or a reckless
disregard for the safety of the deceased. [*Pavlic* at 567. Empha-
sis added.]

Even for malum prohibitum crimes, an intent to injure is sufficient to
fulfill the mens rea necessary for involuntary manslaughter. An
intent to cause great bodily harm or death is the mens rea for
murder, not for manslaughter. The commission of an act inherently
wrong, the natural tendency of which causes great bodily harm with
wanton and wilful disregard of its natural consequence, is the third
leg of the malice requirement for murder.

ness, inattention, and the like, while wantonness
or recklessness, in effect wilfulness, is character-
ized, as the words imply, by wilfulness. [*Id.* at 308.]

The standard is met if the unlawful act is "per-
formed under such circumstances as to supply the
intent to do wrong and inflict some bodily injury."
*Pavlic, supra* at 566.

Additionally, whether the unlawful act is ma-
lum in se or malum prohibitum, the act must be
the direct and proximate cause of death. *People v
Barnes, supra* at 196. In other words, there must
be a "necessary connection" between the unlawful
act and the resulting death. *People v Rockwell,* 39
Mich 503, 504 (1878).

B

Defendant submits that the Court's modification
of the common-law felony-murder rule in *People v
Aaron, supra,* requires a reversal of his conviction.
We disagree. Unlike the common law, *People v
Johnson,* 407 Mich 196; 284 NW2d 718 (1979),
requires proof of an intent to injure in order to
establish an assault and battery. Assault and bat-
tery as it existed at common law was not an
inherently dangerous act. The mens rea require-
ment was subjective, an intent to do "wrong," and
the underlying misdemeanor, though malum in
se,[15] did not require an intent to injure. When an
unintentional killing occurred during the commis-

---

[15] An act is malum in se if it is

condemned as wrong in and of itself by every sense of common
decency and good morals from the time that Noah in his
drunkenness brought shame to his sons so that they backed in
to cover his nakedness, and Lot's daughters employed it for
incestuous purposes. [*People v Townsend,* 214 Mich 267, 272;
183 NW 177 (1921).]

sion of an act that was inherently wrong, the commission of the underlying malum in se misdemeanor supplied the mens rea for involuntary manslaughter.

Pursuant to the definition of involuntary manslaughter set forth in *Ryczek,* defendant's conduct in this case would fulfill the common-law misdemeanor-manslaughter theory of liability: the crime of battery is not a felony, and as defined at common law, it was not an inherently dangerous offense. Unlike the second and third theories of involuntary manslaughter liability, the misdemeanor-manslaughter rule does not require negligence.

The question presented here, however, is not whether defendant is liable for involuntary manslaughter under the common-law version of the misdemeanor-manslaughter rule but, rather, whether the charge given permitted a finding of criminal culpability on the basis of the mens rea required for the common-law misdemeanor.

### III

#### A

Before turning to an explanation for our conclusion that the instruction given contained a valid basis for involuntary manslaughter, it is helpful to examine the decision in *Aaron, supra.* In *Aaron,* this Court eliminated the common-law felony-murder rule, and Michigan's common-law definition of homicide was altered.

The felony-murder rule was abolished because it "violate[d] the basic premise of individual moral culpability upon which our criminal law is based."

Professors Perkins and Boyce describe offenses malum in se as including all felonies, all breaches of public order, and injuries to person or property. Perkins & Boyce, *supra* at 104.

*Id.* at 733. Individual moral culpability was irrelevant because the felony-murder rule punished as first-degree murder

> all homicides, committed in the perpetration or attempted perpetration of proscribed felonies whether intentional, unintentional or accidental, without the necessity of proving the relation between the homicide and the perpetrator's state of mind. [*Id.* at 708.]

The only culpable intent necessary was the intent to commit the underlying felony. In this respect, the common-law misdemeanor-manslaughter rule is similar to the felony-murder rule.

After *Aaron,* culpability for murder will not be presumed from commission of the underlying felony. Rather, the jury will be required to determine from all the circumstances that the defendant "acted with intent to kill or to inflict great bodily harm or with a wanton and wilful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm." *Id.* at 733. Intent may be inferred from "[t]he facts and circumstances involved in the perpetration of a felony . . . , however, [and] the conclusion must be left to the jury to infer from all the evidence." *Id.* at 728-729.

B

The reasons that compelled us to abrogate the felony-murder rule do not necessitate abrogating the misdemeanor-manslaughter doctrine to excuse unintended death caused[16] by an assault and battery committed with the specific intent to cause injury. First, unlike the felony-murder rule, in

[16] The problem of multiple causation, which is frequently at issue in involuntary manslaughter prosecutions is not at issue here.

which no causal connection was necessary between the felony and a death, the misdemeanor-manslaughter rule requires a jury finding beyond a reasonable doubt that there was a direct and proximate connection between the underlying crime and the resulting death. *Rockwell, supra.*

Second, assault and battery is a specific intent crime in which the jury is instructed that "there must be either an intent to injure or an intent to put the victim in reasonable fear or apprehension of an immediate battery." *People v Johnson, supra* at 210. Even before *Aaron,* when the unlawful act was an assault and battery, *Johnson* required the prosecutor to establish a causal relationship between the defendant's culpable state of mind and the resulting death in order to convict the defendant of involuntary manslaughter. By requiring the jury to find a specific intent to injure in all assault and battery cases, *Johnson* provided the culpable mental link mandated by the Court in *Aaron.* Thus, *Aaron* has no effect on the misdemeanor-manslaughter rule when the underlying act is an assault and battery. As in the case of gross negligence, there is a culpable mental state, "the intent to do wrong and inflict some bodily injury." *Pavlic, supra* at 566.

C

The inequities and harsh results possible under the felony-murder rule, where malice was imputed from underlying felonies absent any culpable intent, are not present when the unlawful act is assault and battery as currently defined. Involuntary manslaughter, premised on assault and battery, as currently defined, does not permit conviction from the intent to commit the underlying

misdemeanor "alone," *People v Aaron, supra* at 730. The jury must find beyond a reasonable doubt a culpable state of mind, that is, that the defendant specifically intended to injure the victim, and "[t]he defendant will be permitted to assert any of the applicable defenses . . . [that] he would be allowed to assert" if charged with a specific intent crime. *Id.*

Liability was not imposed "solely on the basis of the bad result . . . ." The prosecution was not relieved of its burden of proving that defendant intended to injure his wife. When a person assaults another with the specific intent to injure, and death is caused, the person should be held responsible for some level of homicide. When the underlying crime is assault and battery, the Penal Code recognizes a distinction based on result. The difference between assault and battery[17] and assault and infliction of serious injury[18] depends solely on the result. It is logical that if an assault and battery causes death, rather than serious injury, the penalty should be increased beyond aggravated battery.

IV

Gross negligence does not require a greater level of criminal culpability than the specific intent to injure. Objective fault may be sufficient for criminal guilt, but it is necessary only when it is the basis on which liability is premised. Indeed, where one who has caused the death of another is aware of the risk created by his conduct and chooses to engage in it, his negligence is advertent and is subjective fault. Perkins & Boyce, *supra* at 106.

[17] MCL 750.81; MSA 28.276.
[18] MCL 750.81a; MSA 28.276(1).

A

The error in this contention is illustrated by viewing the legally significant mental states as lying on a continuum: criminal intention anchors one end of the spectrum and negligence anchors the other. Intention, as explained by Professor Hall, "emphasiz[es] that the actor seeks the proscribed harm not in the sense that he desires it, but in the sense that he has chosen it, he has decided to bring it into being." General Principles of Criminal Law (2d ed), p 114. Negligence, lying at the opposite end of the spectrum, "implies inadvertence, i.e., that the defendant was completely unaware of the dangerousness of his behavior although actually it was unreasonably increasing the risk of occurrence of an injury." *Id.*

Criminal negligence, also referred to as gross negligence, lies between the extremes of intention and negligence. As with intention, the actor realizes the risk of his behavior and consciously decides to create that risk. As with negligence, however, the actor does not seek to cause harm, but is simply "recklessly or wantonly indifferent to the results." *Campbell, supra* at 429.

Lack of actual or imputed intent to commit an act may absolve the actor from criminal liability. Criminal negligence, in some cases, however, may be used "as a substitute, so to speak, for criminal intent in connection with certain offenses." Perkins & Boyce, *supra* at 833. Thus, as we recognized in *People v Barnes, supra* at 198, gross negligence "is equivalent to a criminal intent." Because subjective criminal intent is the most culpable mental state a defendant can possess, both gross negligence and negligence are less culpable mental states. Instructing the jury that it must find an intent to injure the victim is therefore a more

stringent standard than allowing a conviction on the basis of the defendant's gross negligence.

Gross negligence is only necessary if an intent to injure cannot be established. Thus, just as malice for murder may be found in a wanton and wilful disregard of the likelihood of death, or in the intent to do great bodily harm, the mens rea of manslaughter may be either criminal negligence or the intent to injure.

This same spectrum of culpability is recognized in the civil tort arena. As explained by Prosser and Keeton in their tort treatise:

> [T]he mere knowledge and appreciation of a risk —something short of substantial certainty—is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. [Torts (5th ed), § 8, p 36.]

As with criminal sanctions, there is greater civil liability for intentional acts than for negligent acts. There is a tendency to "impose greater responsibility upon a defendant whose conduct was intended to do harm, or was morally wrong." *Id.* at 37. Courts impose liability along the culpability spectrum, imposing the least amount of liability

> where the conduct is merely inadvertent, greater for acts in disregard of consequences increasingly likely to follow, greater still for intentionally invading the rights of another under a mistaken belief of committing no wrong, and greatest of all where the motive is a malevolent desire to do harm. [*Id.*]

Defendant's argument that gross negligence is a more stringent standard than the intent to injure is not well taken.

V

To clarify the analysis in this case and attempt to provide guidance for others, we add the following.

An unlawful act committed with the intent to injure or in a grossly negligent manner that proximately causes death is involuntary manslaughter. In the former instance the defendant has consciously intended to injure in wanton disregard of the safety of others: conduct which if it causes death is (at least) involuntary manslaughter. In the latter instance, criminal liability is imposed because, although the defendant's acts are not inherently wrong, the defendant has acted or failed to act with awareness of the risk to safety and in wilful disregard of the safety of others.

> [P]ains should be taken not to define [gross negligence] in terms of a wanton *and* wilful disregard of a harmful consequence known to be likely to result, because such a state of mind goes beyond negligence and comes under the head of malice. [Perkins & Boyce, *supra* at 846-847. Emphasis in the original.]

Unlike murder, involuntary manslaughter contemplates an unintended result and thus requires something less than an intent to do great bodily harm, an intent to kill, or the wanton and wilful disregard of its natural consequences. An intent to injure or gross negligence strikes the appropriate balance in this crime, which by definition criminalizes an unintended result, i.e., death.

Where an actor knows of the danger to others

and has acted with the intent to injure another, his conduct is advertent and he is guilty of subjective fault. *Id.* at 106. This standard is akin to the subjective state of mind that will permit a finding of the malice required for murder, the intent to do great bodily harm or the intent to kill. CJI2d 16.4(3). Intent is not implied in law from commission of a mere assault and battery. As in *Aaron,* intent to injure must be found by the jury beyond a reasonable doubt.

Where an actor knows of the danger to others that might follow from his act or failure to act, and wilfully disregards the consequences by failing to use the care that a reasonable person would have used in the circumstances, his negligence is also advertent and wilful, but the mens rea is objective. This standard is akin to the state of mind that will permit a finding of the malice required for murder from the wilful and wanton disregard of a likelihood of death or great bodily harm.

As has been pointed out, intentional, wilful, or wanton violation of a statute, designed for the protection of human life or limb, as in the involuntary manslaughter statute, is the mens rea requirement for manslaughter. Perkins & Boyce, *supra* at 110-111. Thus, where a traffic regulation makes it unlawful to drive without a license, an inadvertent failure to renew a license will not be sufficient for guilt of manslaughter, whereas a person who has no license because he failed the driver's test, and nonetheless ventures onto the highway, has wilfully violated a regulation established for the protection of life and limb, and is criminally negligent. Similarly, one who intends to injure another is culpably negligent (at least) if his intentional act causes the death of another.

We do not resolve whether an act that was

malum in se at common law but that does not involve the intent to injure can furnish the mens rea for involuntary manslaughter. Simply because a criminally negligent act of gross negligence will also justify liability for involuntary manslaughter in no way suggests that an intentional invasion of one's right to security in life and limb should be nonculpable.

The practical reality is that the likelihood of charges being filed arising from offenses defined at common law as malum in se, but that do not require an intent to injure, is exceedingly remote. The intent to injure instances of misdemeanor manslaughter can be addressed by the standard we have set forth. Unanticipated and unusual situations arising from death caused by the commission of offenses defined as malum in se at the common law but that do not require an intent to injure must be dealt with case by case.

VI

We conclude that if an assault and battery is committed with a specific intent to inflict injury and causes unintended death, the actor may be found guilty of (at least) involuntary manslaughter. We express no opinion with regard to the merits of the misdemeanor-manslaughter rule in contexts other than assault and battery. Pursuant to the dissenting opinion, the most defendant could be charged with is assault and infliction of serious injury, MCL 750.81a; MSA 28.276(1) an offense that carries a maximum one year jail sentence or a $500 fine.

We reject the suggestion that progressive notions of jurisprudence require absolution for an unintended death under circumstances from which the factfinder may infer from a powerful blow an

intent to injure that factually causes death. While we agree with the dissent that "[m]isdemeanors are crimes, and defendants who commit them are subject to punishment under the law," *post* at 618, when one strikes another with "probably all the force that one can muster," the proper charge is manslaughter and not assault.

RILEY, MALLETT, and WEAVER, JJ., concurred with BOYLE, J.

CAVANAGH, J. I respectfully dissent. The principle that this Court recognized in *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980), compels the abrogation of the common-law unlawful-act misdemeanor-manslaughter rule. Gross negligence should be recognized as the mens rea standard for all common-law forms of involuntary manslaughter. It is inconsistent with *Aaron* to make an exception in cases in which the underlying misdemeanor is an assault and battery requiring a specific intent to injure, because proof of a specific intent to injure will not, in all cases, satisfy the gross negligence standard for involuntary manslaughter. In the instant case, the defendant's conviction must be reversed because the jury instructions did not provide a valid basis for an involuntary manslaughter conviction, and I would find that error prejudicial.

In *Aaron,* we recognized that it is inherently unjust to presume the existence of the mens rea for murder merely on a showing of the mens rea required for an underlying felony. Specifically, our holdings in *Aaron* were premised on the following principle of criminal jurisprudence:

"If one had to choose the most basic principle of the criminal law in general . . . it would be that

criminal liability for causing a particular result is not justified in the absence of some culpable mental state *in respect to that result* . . . ." [*Id.* at 708. Emphasis added.]

Applying that principle to the crime of murder, we recognized that culpability for murder should require the establishment of a link between the murder (the result) and the defendant's mens rea. Stated otherwise, to hold a defendant accountable for murder requires a showing that the defendant had a mens rea *with regard to the murder.* The felony murder rule violated that principle because the rule, in effect, permitted the intent to commit the underlying felony, in itself, to serve as the mens rea for murder.[1] This violation led us to abolish the common-law felony murder rule, and to hold that murder liability could be imposed only on an independent showing that the defendant had a mens rea for murder, which we decided was malice.

Like the common-law felony-murder rule, the unlawful-act misdemeanor-manslaughter rule violates the principle set forth in *Aaron,* and it too should be abrogated. Pursuant to the unlawful-act misdemeanor-manslaughter rule, a defendant may be convicted of involuntary manslaughter where it has been shown that the defendant committed the unlawful act that proximately caused death. Proof of the mens rea for manslaughter is presumed to exist on the basis of a showing of the mens rea required for the underlying misdemeanor. Contrary to the principle that we endorsed in *Aaron,* liability for a homicide is imposed without an independent showing of a mens rea with regard to the homicide. To eliminate the perpetuation of such an injustice, this Court should abolish the

[1] *Id.* at 717.

unlawful-act misdemeanor-manslaughter rule. Because the Court has already recognized the suitability of a gross negligence standard for the other forms of common-law involuntary manslaughter, I would now adopt a uniform gross negligence standard to be applied to all forms of common-law involuntary manslaughter.

To recognize an exception, where the underlying misdemeanor is an assault and battery requiring proof of a specific intent to injure, would be inconsistent with the principle of *Aaron* because the requisite link between the homicide, and the mens rea with regard to the homicide, would not be established in all cases. While such an exception would require the establishment of *a* culpable mental state, it would not be *the* mental state required for involuntary manslaughter—which must be gross negligence. I reject the majority's contention that the gross negligence mens rea standard for involuntary manslaughter is, at the most, comparable to, but no greater than, the specific intent-to-injure mens rea standard for assault and battery. ("Gross negligence does not require a greater level of criminal culpability than the specific intent to injure." *Ante* at 603.) In my view, gross negligence would not necessarily be shown in every case simply because there is a showing of a specific intent to injure—to whatever degree, and regardless of whether the injury is physical or mental in nature.

To hold a defendant accountable for involuntary manslaughter on the basis that he was "grossly negligent" requires a showing that the defendant wilfully disregarded not just a high risk of injury, but a high risk of *death or serious bodily injury.* This understanding of the gross negligence standard for involuntary manslaughter is reflected in

*People v Pavlic,* 227 Mich 562, 566; 199 NW 373 (1924), in which we stated:

> [N]or is he guilty of manslaughter unless he commits the act carelessly and in such a manner as manifests a *reckless disregard of human life.* [Emphasis added.]

We elaborated on this view of gross negligence in *People v Orr,* 243 Mich 300, 307; 220 NW 777 (1928), in which we listed three elements that had to be established to show gross negligence for a lawful-act involuntary-manslaughter conviction:

> (1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another.
> (2) Ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand.
> (3) The omission to use such care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is *likely to prove disastrous to another.* [Emphasis added.]

Since *Orr,* these three elements have come to be accepted as the gross negligence standard for lawful-act involuntary manslaughter, and have been incorporated into the current criminal jury instructions for involuntary manslaughter.[2]

At different times in our discussions of the gross negligence showing specifically required for an involuntary manslaughter conviction, we have indicated that the relevant inquiry includes an assessment whether the defendant demonstrated "an indifference to consequences,"[3] an "indifference to

[2] CJI2d 16.10, 16.18.

[3] *People v Barnes,* 182 Mich 179, 198; 148 NW 400 (1914).

the rights of others,"[4] "a thoughtless disregard of consequences,"[5] "the intent to do wrong and inflict some bodily injury,"[6] a "reckless disregard of the safety of others,"[7] a "culpable indifference to the safety of others,"[8] or whether the defendant was "recklessly or wantonly indifferent to the results"[9] or failed to exercise such care as to make it "likely to prove disastrous to another."[10] These descriptions must be viewed in their proper context. When we made each of these statements, a *homicide* was always at issue. Accordingly, any mention of the "consequences," the "rights," the "wrong," the "injury," the "safety," the "results," or the "disast[er]" all referred to the harm that resulted —death, or some harm of the same general nature —serious bodily injury. Because the context will always be a homicide in a prosecution for involuntary manslaughter, the pertinent risks under the gross negligence standard for involuntary manslaughter will always be *death and serious bodily injury*. A loss of life will have resulted, and the defendant will have to be shown to have been *grossly negligent with regard to human life* in order to be held accountable for involuntary manslaughter. The Model Penal Code, the commentators, and the current criminal jury instructions are in accord with this understanding of the gross negligence standard for involuntary manslaughter.[11] The majority fundamentally errs when it

[4] *Id.*

[5] *People v Ryczek*, 224 Mich 106, 112; 194 NW 609 (1923).

[6] *Pavlic, supra* at 566.

[7] *Id.*

[8] *People v Campbell*, 237 Mich 424, 428; 212 NW 97 (1927).

[9] *Id.* at 429.

[10] *Orr, supra* at 307.

[11] See Model Penal Code, § 2.02(2)(c), p 226 (a person acts recklessly with respect to the *death of another* when he consciously disregards a substantial and unjustifiable risk that his conduct will cause *that*

characterizes the risk under the gross negligence
standard for involuntary manslaughter merely as
a risk that injury—no matter how slight—will
occur.[12]

The majority further errs when it indicates that
a specific intent to injure standard for assault and
battery is a more stringent standard than the
gross negligence standard for involuntary man-
slaughter. ("Instructing the jury that it must find
an intent to injure the victim is therefore a more
stringent standard than allowing a conviction on

*result*); 3A Gillespie, Michigan Criminal Law & Procedure (2d ed),
§ 1658, p 243 ("[I]f [an act] is in its nature lawful if properly per-
formed, but *dangerous to life* if improperly performed, and its im-
proper performance results in unintended death, the offense is man-
slaughter") (emphasis added); 2 LaFave & Scott, Substantive Criminal
Law, § 7.12, p 278 (explaining that to convict for criminal negligence-
involuntary manslaughter "the defendant's conduct . . . must in-
volve a high degree of *risk of death or serious bodily injury*" and "the
defendant must be aware of the fact that his conduct creates *this
risk*") (emphasis added); CJI2d 16.18(4) (elements to prove gross
negligence include "that the defendant failed to use ordinary care to
prevent injuring another when, to a reasonable person, it must have
been apparent that the result was likely to be *serious injury*")
(emphasis added); CJI2d 16.10 (conviction for involuntary manslaugh-
ter is appropriate where the defendant acted "with *unreasonable
disregard for life*" or "was *grossly negligent of human life*") (emphasis
added). See also *People v Heflin*, 434 Mich 482, 576, n 63; 456 NW2d
10 (1990) ("the relevant inquiry is whether the defendant's conduct
was grossly negligent with respect to the safety of other persons"—
explained. to mean that the "defendant must have been committing
an unlawful act which . . . was *grossly negligent of human life*")
(LEVIN, J., dissenting).

[12] In particular, the majority focuses on language from *Pavlic*
indicating that the gross negligence standard will be met "if the
unlawful act is 'performed under such circumstances as to supply the
intent to do wrong and inflict some bodily injury.'" *Ante* at 599
(quoting *Pavlic*). That language from *Pavlic* must be read in context.
In *Pavlic*, the Court began its discussion of the gross negligence
standard by setting forth the character of the risk at issue, which it
described as a threat to human life: "nor is he guilty of manslaughter
unless he commits the act carelessly and in such a manner as
manifests a reckless disregard of *human life*." *Id.* at 566. The subse-
quent comments regarding an "intent to do wrong or inflict some
bodily injury" must be understood against the backdrop of that
introduction, i.e., the relevant inquiry is whether the defendant
intended "to inflict some bodily injury" so as to "manifest[ ] a reckless
disregard of human life."

the basis of the defendant's gross negligence."
*Ante* at 604-605.) The majority does not offer any
authority in support of the narrow proposition
that a specific intent to injure is always a more
culpable mental state than the gross negligence
standard required for involuntary manslaughter.
Significantly, neither the lower courts, nor the
prosecutor recognized that the gross negligence
standard for involuntary manslaughter is always a
less demanding standard than a specific intent to
injure standard. In fact, the prosecutor indicates in
its brief that it views the gross negligence stan-
dard for involuntary manslaughter as a more diffi-
cult standard when it acknowledges that the de-
fendant in this case could *not* be convicted of
involuntary manslaughter under a gross negli-
gence standard.[13] Finally, even if one were to
accept the majority's premise that a specific intent
to injure would always evidence at least gross
negligence, it remains to be explained why there is
a need to recognize a special category for the
specific intent situation. Surely, the law on common-
law involuntary manslaughter would be clearer
if the Court simply endorsed a gross negligence
standard across the board.[14]

---

[13] The prosecutor states:

> And even if the act of deliberately hitting someone can come
> under the broad rubric of negligence, it is an act which, while
> morally reprehensible, will not usually be the sort of act which
> would appear to the ordinary person to likely prove disastrous
> to another . . . . Under the defendant's theory, assaulting
> someone and causing their death would not be manslaughter in
> the absence of a showing of gross negligence. *The most the
> defendant could be said to be guilty of, under this theory, is
> aggravated assault.* [Emphasis added.]

[14] To further clarify the parameters of the gross negligence stan-
dard that I propose for involuntary manslaughter, and my reason for
rejecting the majority's intent to injure standard, it may be helpful to
contrast the mens rea requirement for murder with my understand-
ing of the mens rea requirement for involuntary manslaughter.

Imposing a uniform gross negligence standard would not preclude the possibility of an involuntary manslaughter conviction of a defendant who

---

The mens rea for murder is malice. In *People v Aaron,* 409 Mich 672, 728; 299 NW2d 304 (1980), we defined malice as:

[1] the intention to kill,

[2] the intention to do great bodily harm, or

[3] the wanton and wilful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm.

In my view, the mens rea for involuntary manslaughter is gross negligence. Guided by case law from this Court, I define gross negligence as a wilful disregard of a high risk of death or serious bodily injury. I do not, contrary to the majority's description, assert that under the gross negligence standard, the "defendant must intend to cause serious injury or death." *Ante* at 597, n 12. *Serious* injury or death are the applicable risks under a gross negligence standard for homicide liability. Because the gross negligence standard is a negligence-based standard, a showing of intent is not required. Further, even if an intent to injure could be shown in a particular case, such intent to injure *may* or *may not* constitute gross negligence.

An intent to injure would constitute gross negligence if the intent to injure, under the circumstances, manifests a wilful disregard of a high risk of death or serious bodily injury. Note that an intent to injure that constitutes gross negligence does *not* have to also manifest "a *wanton and wilful* disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or serious bodily injury"—as recognized by the majority, that is the "third leg of the malice requirement for murder." *Ante* at 598, n 14. Moreover, and as indicated above, an intent to injure that constitutes gross negligence does not have to be an "intention to kill," or an "intention to do great bodily harm"—properly understood, those are the first and second legs of the malice requirement for murder.

However, an intent to injure will not constitute gross negligence in *all* cases merely because death results from the defendant's act. Specifically, an intent to injure will not constitute gross negligence where the defendant's act failed to encompass a *high risk of death or serious bodily injury,* or where the defendant did not *wilfully* disregard such risks.

It is the majority's position that "When a person assaults another with the specific intent to injure, and death is caused, the person should be held responsible for some level of homicide." *Ante* at 603. It is my position that when a person assaults another with the specific intent to injure, and death is caused, *Aaron* mandates that a person cannot be held responsible for homicide without showing a mens rea with regard to the *homicide.* A mere intent to injure—to whatever degree—would not in all cases manifest the requisite mens rea when the homicide is involuntary manslaughter.

commits an assault and battery resulting in death. Depending on the circumstances, proof of a specific intent to injure may also manifest a wilful disregard of a high risk of death or serious bodily injury. However, that would not be true in all cases, making it inappropriate to conclusively presume the existence of gross negligence. For example, a defendant may intentionally inflict bodily harm on another person by a moderate blow with his fist; the person may then fall to the sidewalk, fracture his skull, and unexpectedly die. While the defendant in that situation clearly had a specific intent to injure, the defendant may not have demonstrated a wilful disregard of a high risk of death or serious bodily injury. Both the degree of risk and the defendant's awareness of that risk would have to be considered before a proper determination regarding gross negligence could be made.

To infer the existence of gross negligence in such an instance, merely on a showing of a specific intent to injure, runs counter to the correlative principle we supported in *Aaron*. In addition, the defendant would be prevented from offering any defenses with regard to the existence of gross negligence. Finally, the defendant may end up being punished for a homicide merely on the basis of a bad result, and despite the lack of requisite mens rea: if the defendant had intended to injure and death had *not* resulted, the defendant could be convicted only of assault and battery; but because the defendant intended to injure and death *did* result, the defendant could be convicted of involuntary manslaughter. To impose liability for homicide solely because of a bad result does not serve to deter homicides or any legitimate purpose under the criminal law; to do so is abusive in itself.

The instant case is another example of a situa-

tion in which it could be shown that the defendant had a specific intent to injure, but perhaps could *not* be shown that the defendant wilfully disregarded a high risk of death or serious bodily injury. The prosecutor's medical expert testified that the cause of death in this case was "very rare," and "very unusual," and that people could receive "similar blows frequently and [not] die and perhaps [not even be] severely injured."[15] This testimony strongly suggests that a high risk of death or serious bodily injury was not created when the "defendant slapped [his wife] once across the face with an open hand." *Ante* at 590. Notably, the prosecutor characterizes the victim's death in this case as "entirely unexpected."

If a defendant is not shown to have been grossly negligent with respect to human life, but is shown to have had a specific intent to injure and death proximately resulted from his acts, the defendant would not be allowed to escape all punishment—contrary to the majority's suggestion otherwise. Misdemeanors are crimes, and defendants who commit them are subject to punishment under the law. In this case, the defendant committed an assault and battery. The defendant's "conduct in causing or intending to cause injury is a crime . . . and should be dealt with as such, i.e., as a crime defined in reference to the specific evil of bodily injury that it portends."[16] In this way, the law ensures that the punishment correlates with

---

[15] Specifically, Dr. Stephen Cohle testified:

I can say this is a very rare cause of death. It is very unusual. . . . And I will say, early on, I can't prove beyond a reasonable doubt all of the reasons why she did die from this blow, because it is very unusual. And I'm sure people receive similar blows frequently and don't die and perhaps aren't even severely injured . . . .

[16] Model Penal Code, § 210.3, p 78.

the crime. For the law to properly impose punishment for a homicide, culpability regarding the *homicide* must be shown in every case.

In *Heflin, supra,* Justice LEVIN accurately observed that the time has come to abolish the common-law misdemeanor-manslaughter rule:

> The unlawful-act manslaughter doctrine should be abolished because in most cases it is unnecessary—gross negligence will be sufficient where liability for involuntary manslaughter is warranted—and in a few cases it will lead to unjustifiable results. The rule has been abolished in England and in at least some American jurisdictions, rejected by the Model Penal Code, and criticized by commentators. The misdemeanor-manslaughter rule should be abandoned because there was no good reason for adopting it and there is no good reason for keeping it. [*Heflin* at 577-578 (LEVIN, J., dissenting).]

In addition to the reasons cited by Justice LEVIN, the principle embraced by this Court in *Aaron* dictates the elimination of the unlawful-act misdemeanor-manslaughter rule. After *Aaron,* culpability for homicide may not be presumed from the commission of another crime. The majority's special category is unacceptable because it equates a specific intent to injure—to whatever degree and kind—with a wilful disregard of a high risk of death or serious bodily injury, and, in effect, violates the principles of *Aaron.* This case provides the Court with an excellent opportunity to abolish the unlawful-act misdemeanor-manslaughter rule once and for all. I would do so now, and thereby ensure that common-law liability for homicide will only be imposed where culpability for death has been proven.

BRICKLEY, C.J., and LEVIN, J., concurred with CAVANAGH, J.