**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED MAY 23, 2007

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant/Cross-
Appellee,

v

No. 130245

RANDY R. SMITH,

Defendant-Appellee/Cross-
Appellant.

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

Defendant was charged with and convicted of second-degree murder, MCL 750.317, after he killed the victim with a single gunshot to the head. The trial court denied defendant's request to instruct the jury on statutory involuntary manslaughter, MCL 750.329. At issue is whether the trial court should have instructed the jury on statutory involuntary manslaughter because it is a necessarily included lesser offense of second-degree murder. We hold that the court correctly denied defendant's request for the instruction. Statutory involuntary manslaughter is not an "inferior" offense of second-degree murder

under MCL 768.32(1) because it contains elements—that the death resulted from the discharge of a firearm and that the defendant intentionally pointed the firearm at the victim—that are not subsumed in the elements of second-degree murder. Thus, statutory involuntary manslaughter is not a necessarily included lesser offense of second-degree murder. We reverse the part of the judgment of the Court of Appeals that held to the contrary and reinstate defendant's convictions of second-degree murder and possession of a firearm during the commission of a felony, MCL 750.227b. We also deny defendant's cross-application for leave to appeal because we are not persuaded that the questions presented should be reviewed by this Court.

## I. FACTS AND PROCEDURAL POSTURE

Defendant shot and killed a 16-year-old girl who was visiting his home. Defendant and the victim were sitting on a couch when defendant pointed a loaded gun at the victim's head and told her, "Say I won't do it." A witness in the next room looked away briefly and then heard a gunshot. When the witness looked back, she saw the victim lying motionless on the floor while defendant sat on the couch with the gun in his hand. Defendant told the witness to say that the victim shot herself. The two then fled the house.

Defendant was charged with second-degree murder and felony-firearm. The trial court instructed the jury on the lesser offense of common-law involuntary manslaughter based on gross negligence. The trial court denied defendant's request to instruct on statutory involuntary manslaughter under MCL 750.329,

2

because it contains elements that are not included in the offense of second-degree murder. The court explained that statutory involuntary manslaughter is therefore a cognate offense, rather than a necessarily included lesser offense, of second-degree murder. The jury found defendant guilty as charged of second-degree murder and felony-firearm.

The Court of Appeals reversed defendant's convictions and remanded for a new trial on the basis that the trial court erred in failing to instruct the jury on statutory involuntary manslaughter. Unpublished opinion per curiam of the Court of Appeals, issued December 22, 2005 (Docket No. 256066). The Court of Appeals explained that in *People v Mendoza*, 468 Mich 527; 664 NW2d 685 (2003), this Court held that manslaughter, both voluntary and involuntary, is a necessarily included lesser offense of murder. Thus, under *Mendoza*, a defendant who is charged with murder is entitled to an instruction on voluntary or involuntary manslaughter if a rational view of the evidence would support it. Although the holding in *Mendoza* pertained to *common-law* manslaughter under MCL 750.321, the Court of Appeals here assumed, without explanation, that *Mendoza* also somehow held that *statutory* involuntary manslaughter under MCL 750.329 is a necessarily included lesser offense of murder. The Court of Appeals made no attempt to ascertain whether the elements of statutory involuntary manslaughter are subsumed in the offense of second-degree murder. The Court of Appeals also asserted, again without explanation, that *Mendoza* "appears to contradict" *People v Cornell*, 466 Mich 335; 646 NW2d 127 (2002). In any event,

3

the Court of Appeals concluded that the trial court had "violated the mandate of *Mendoza* by rejecting defendant's requested manslaughter instruction," and that defendant's convictions must therefore be reversed.

The prosecution sought leave to appeal on the instructional issue. This Court directed the clerk to schedule oral argument regarding whether to grant the prosecution's application or take other peremptory action.[1]  474 Mich 1100 (2006). We directed the parties to address

> (1) whether statutory involuntary manslaughter, MCL 750.329, is a necessarily included lesser offense of murder; and, if so (2) whether a rational view of the evidence in this case supports a conviction of statutory involuntary manslaughter; and, if so (3) whether the Oakland Circuit Court's failure to give a jury instruction on statutory involuntary manslaughter was harmless error.  [*Id.*]

## II. STANDARD OF REVIEW

Whether statutory involuntary manslaughter is an inferior offense of second-degree murder under MCL 768.32 is a question of law that this Court reviews de novo. *Mendoza, supra* at 531.

## III. ANALYSIS

The trial court did not err in refusing to instruct the jury on statutory involuntary manslaughter under MCL 750.329. MCL 768.32(1) provides:

> Except as provided in subsection (2), upon an indictment for an offense, consisting of different degrees, as prescribed in this

---

[1] Defendant also filed a cross-application for leave to appeal. In the order directing the clerk to schedule oral argument on the prosecution's application, this Court stated that defendant's cross-application remains pending. 474 Mich 1100 (2006).

4

chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense.

In *Cornell,* this Court approved of the following explanation of the word "inferior" in MCL 768.32(1):

> "We believe that the word 'inferior' in the statute does not refer to inferiority in the penalty associated with the offense, but, rather, to the absence of an element that distinguishes the charged offense from the lesser offense. The controlling factor is whether the lesser offense can be proved by the same facts that are used to establish the charged offense." [*Cornell, supra* at 354, quoting *People v Torres (On Remand)*, 222 Mich App 411, 419-420; 564 NW2d 149 (1997).]

This Court then held that an "inferior" offense under MCL 768.32(1) is limited to necessarily included lesser offenses. *Cornell, supra* at 353-354. In conclusion, we held:

> [A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it. [*Id.* at 357.]

In *Mendoza*, this Court applied *Cornell* and concluded that *common-law* voluntary manslaughter and involuntary manslaughter are necessarily included lesser offenses of murder and thus "inferior" offenses under MCL 768.32(1). *Mendoza, supra* at 533, 541. We explained that the only element distinguishing murder from common-law manslaughter is malice, and that all the elements of

5

common-law manslaughter are completely subsumed in the offense of murder. *Id.* at 540-541.

To apply the *Cornell*/*Mendoza* test, we must compare the elements of statutory involuntary manslaughter and second-degree murder. The statutory involuntary manslaughter statute at the time defendant killed the victim provided, in relevant part:

> Any person who shall wound, maim or injure any other person by the discharge of any firearm, pointed or aimed, intentionally but without malice, at any such person, shall, if death ensue from such wounding, maiming or injury, be deemed guilty of the crime of manslaughter. [MCL 750.329.]

The elements of statutory involuntary manslaughter are as follows: (1) a death, (2) the death was caused by an act of the defendant, (3) the death resulted from the discharge of a firearm, (4) at the time of the discharge, the defendant was intentionally pointing the firearm at the victim, and (5) the defendant did not have lawful justification or excuse for causing the death. *People v Heflin*, 434 Mich 482, 497; 456 NW2d 10 (1990). By contrast, the elements of second-degree murder are as follows: (1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death. *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998).

Comparing the elements of these offenses, we conclude that statutory involuntary manslaughter under MCL 750.329 is not a necessarily included lesser offense of second-degree murder because it is not an "inferior" offense under

6

MCL 768.32(1). It is plain that the elements of statutory involuntary manslaughter are not completely subsumed in the elements of second-degree murder. Statutory involuntary manslaughter contains two elements that are not required to prove second-degree murder: (1) that the death resulted from the discharge of a firearm and (2) that the defendant intentionally pointed a firearm at the victim. Second-degree murder, on the other hand, may be committed without a firearm or even without a weapon of any kind. Because it is possible to commit second-degree murder without first committing statutory involuntary manslaughter, statutory involuntary manslaughter cannot be a necessarily included lesser offense of second-degree murder. *Cornell, supra* at 361; *People v Bearss*, 463 Mich 623, 627; 625 NW2d 10 (2001).

Our holding is consistent with *People v Holtschlag*, 471 Mich 1, 21-22; 684 NW2d 730 (2004), where this Court held:

> [I]t must be kept in mind that "the sole element distinguishing manslaughter and murder is malice," *Mendoza* at 536, and that "involuntary manslaughter is a catch-all concept including all manslaughter not characterized as voluntary: 'Every unintentional killing of a human being is involuntary manslaughter if it is neither murder nor voluntary manslaughter nor within the scope of some recognized justification or excuse.'" [*People v Datema*, 448 Mich 585, 594-595; 533 NW2d 272 (1995)]. (Citation omitted.) If a homicide is not voluntary manslaughter or excused or justified, it is, generally, either murder or involuntary manslaughter. If the homicide was committed with malice, it is murder. If it was committed with a lesser mens rea of gross negligence or an intent to injure, and not malice, it is not murder, but only involuntary manslaughter.

7

*Holtschlag* applies to common-law manslaughter, not statutory manslaughter. *Holtschlag* does not, and could not, hold that every killing of a human being is statutory involuntary manslaughter if it was committed without malice, was not voluntary, and was not excused or justified. One who involuntarily kills a person without malice and without excuse or justification does not necessarily commit statutory involuntary manslaughter. Similar to our second-degree murder analysis, statutory involuntary manslaughter contains two elements that are not required to prove common-law involuntary manslaughter: (1) that the death resulted from the discharge of a firearm and (2) that the defendant intentionally pointed a firearm at the victim. Thus, just as statutory involuntary manslaughter is not included in the offense of second-degree murder, it is not included in the offense of common-law involuntary manslaughter. We reject defendant's and the concurrence's argument that statutory involuntary manslaughter is merely but one form of common-law involuntary manslaughter.[2]

Further, our conclusion that statutory involuntary manslaughter is not a necessarily included lesser offense of second-degree murder is consistent with pre-

---

[2] Justice Markman concedes in his concurrence that statutory involuntary manslaughter requires proof of an element not required to prove second-degree murder. The discussion should end there. Because all the elements of statutory involuntary manslaughter are not completely subsumed in the elements of second-degree murder, statutory involuntary manslaughter cannot be an inferior offense to second-degree murder under MCL 768.32(1) and *Cornell, supra* at 354. Justice Markman's discussion of the relationship between statutory and common-law manslaughter is thoughtful but is irrelevant to our analysis.

*Cornell* caselaw. In *Heflin, supra* at 497, this Court held that statutory involuntary manslaughter is a cognate lesser offense[3] of murder, not a necessarily included lesser offense.[4] MCL 768.32(1) does not permit consideration of cognate lesser offenses. *Cornell, supra* at 354.

It does not matter that, in the particular case before us, a firearm was used to commit the murder. As *Cornell* makes clear, when deciding whether a lesser offense is necessarily included in the greater offense, the determination whether all the elements of the lesser offense are included in the greater offense requires an abstract analysis of the elements of the offenses, *not* the facts of the particular case. *Id.* at 360-361.[5] The facts are instead considered to determine whether an instruction on a necessarily included lesser offense is proper in that particular case, i.e., whether the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser offense and whether a rational view of the evidence supports the instruction. *Cornell, supra* at 357.

---

[3] "Cognate offenses share several elements, and are of the same class or category as the greater offense, but the cognate lesser offense has some elements not found in the greater offense." *Mendoza, supra* at 532 n 4.

[4] In *Heflin, supra* at 505, this Court held that the trial court did not err in refusing to instruct the jury regarding the offense of statutory involuntary manslaughter despite giving instructions on murder and voluntary manslaughter.

[5] Justice Markman falls into the trap of comparing *facts* that could support a second-degree murder conviction with the *elements* of statutory involuntary manslaughter.

Finally, we disagree with the Court of Appeals that *Mendoza* and *Cornell* are inconsistent. In *Mendoza*, we applied the *Cornell* test and concluded that common-law manslaughter under MCL 750.321, either voluntary or involuntary, is an "inferior" offense of murder. *Mendoza, supra* at 540-541. We reached this conclusion because common-law manslaughter does not contain any additional elements beyond those required for murder. *Id.* The only distinction between manslaughter and murder is the element of malice. *Id.* at 540. For voluntary manslaughter, proof of adequate provocation negates the existence of malice. *Id.* For involuntary manslaughter, gross negligence is a form of *mens rea* that is included in the greater *mens rea* of murder. *Id.* at 540-541. Thus, we concluded that the elements of common-law manslaughter are completely included in the elements of murder. *Id.* at 541. A defendant cannot commit murder without first satisfying the elements of common-law manslaughter. The Court of Appeals does not explain how this holding is inconsistent with *Cornell*, and we do not see any inconsistency.

## IV. CONCLUSION

Because statutory involuntary manslaughter under MCL 750.329 contains elements that are not included in second-degree murder, it is not an "inferior" offense under MCL 768.32(1), and no instruction was permitted under *Cornell*. Thus, the trial court did not err in refusing to instruct the jury on statutory involuntary manslaughter. We reverse this aspect of the Court of Appeals judgment and reinstate defendant's convictions of second-degree murder and

10

felony-firearm.  We deny defendant's cross-application for leave to appeal because we are not persuaded that the questions presented should be reviewed by this Court.

Maura D. Corrigan
Clifford W. Taylor
Elizabeth A. Weaver
Robert P. Young, Jr.

11

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant/Cross-
       Appellee,

v                                                        No. 130245

RANDY R. SMITH,

       Defendant-Appellee/Cross-
       Appellant.

_____

MARKMAN, J. *(concurring in the result only).*

The majority concludes that defendant was not entitled to an instruction on statutory involuntary manslaughter, MCL 750.329(1), on the basis that statutory involuntary manslaughter is not an "inferior" offense of second-degree murder under MCL 768.32(1). I respectfully disagree. In *People v Holtschlag*, 471 Mich 1; 684 NW2d 730 (2004), this Court concluded that common-law involuntary manslaughter is a catch-all offense that encompasses all homicides committed without a *mens rea* of malice that are not either legally justified or voluntary manslaughter. Just as this distinction required the Court in *Holtschlag* to find that a defendant who committed a homicide during a felony could be convicted of involuntary manslaughter, I believe that it requires the Court in this case to find that defendant was entitled to an instruction on statutory involuntary

manslaughter. However, in this case the jury convicted defendant of second-degree murder and rejected the lesser offense of common-law involuntary manslaughter. Because the jury concluded that defendant committed the instant homicide possessing a *mens rea* of malice, I believe that the trial court's failure to instruct the jury on statutory involuntary manslaughter was harmless error. Accordingly, I agree with the result reached by the majority and would reverse the judgment of the Court of Appeals and remand this case to the trial court to reinstate defendant's convictions of second-degree murder and possession of a firearm during the commission of a felony.

Defendant shot and killed a 16-year-old girl who was visiting his home. Defendant was charged with second-degree murder and felony-firearm. The trial court instructed the jury on common-law involuntary manslaughter, but denied defendant's request for an instruction on statutory involuntary manslaughter, MCL 750.329(1). Defendant was convicted by the jury of second-degree murder and felony-firearm. The Court of Appeals reversed the judgment of conviction and remanded for a new trial because the trial court erred in failing to instruct the jury on statutory involuntary manslaughter.

MCL 750.329(1) and MCL 768.32(1) state respectively:

> A person who wounds, maims, or injures another person by discharging a firearm that is pointed or aimed intentionally but without malice at another person is guilty of manslaughter if the wounds, maiming, or injuries result in death.

* * *

2

Except as provided in subsection (2),[1] upon an indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense.

Therefore, defendant is only entitled to an instruction on statutory involuntary manslaughter if that crime can be considered an "offense inferior to that charged in the indictment [i.e., second-degree murder]." In *People v Cornell,* 466 Mich 335, 354; 646 NW2d 127 (2002), this Court defined the language "offense inferior to that charged in the indictment" as an "'offense [that] can be proved by the same facts that are used to establish the charged offense.'" (Citation omitted.) In other words, for crimes not formally divided into degrees, a defendant can be convicted of either the charged offense or a necessarily included lesser offense of the charged offense. This Court further concluded that, in order for a defendant to be entitled to an instruction on a necessarily included lesser offense, it must be supported by a "rational view of the evidence . . . ." *Id.* at 357.

Common-law involuntary manslaughter is a necessarily included lesser offense of second-degree murder. *People v Mendoza,* 468 Mich 527, 534; 664 NW2d 685 (2003). Under the common law, "the presence of malice became both synonymous with the absence of mitigating circumstances and the sole element

---

[1] The provisions in subsection 2 do not apply in this case.

distinguishing murder from manslaughter." *Id.* at 540. Therefore, this Court concluded:

> Regarding involuntary manslaughter, the lack of malice is evidenced by involuntary manslaughter's diminished mens rea, which is included in murder's greater mens rea. See *People v Datema*, 448 Mich 585, 606; 533 NW2d 272 (1995), stating:
>
> "'[P]ains should be taken not to define [the mens rea required for involuntary manslaughter] in terms of a wanton and wilful disregard of a harmful consequence known to be likely to result, because such a state of mind goes beyond negligence and comes under the head of malice.'
>
> "Unlike murder, involuntary manslaughter contemplates an unintended result and thus requires something less than an intent to do great bodily harm, an intent to kill, or the wanton and wilful disregard of its natural consequences. [Citations omitted; emphasis added.]"
>
> See also *United States v Browner*, 889 F2d 549, 553 (CA 5, 1989), stating, "In contrast to the case of voluntary manslaughter . . . the absence of malice in involuntary manslaughter arises not because of provocation induced passion, but rather because the offender's mental state is not sufficiently culpable to reach the traditional malice requirements."
>
> Thus, we conclude that the elements of involuntary manslaughter are included in the offense of murder because involuntary manslaughter's mens rea is included in murder's greater mens rea. [*Id.* at 540-541 (emphasis omitted).]

This Court came to a similar conclusion in *Holtschlag, supra*. In *Holtschlag,* the defendants were convicted of involuntary manslaughter after placing gamma hydroxybutyric acid (GHB)[2] in the drink of a 14-year-old girl who

---

[2] GHB is sometimes known as the "date rape drug."

subsequently became sick and died. The defendants argued that they could not be convicted of involuntary manslaughter under these facts, because involuntary manslaughter had been defined, in part, as a homicide that occurs during the commission of an unlawful act that is not a felony.[3] Because the act of placing GHB in an unsuspecting person's drink is a felony, the defendants argued that they could not have committed involuntary manslaughter.

This Court undertook its analysis in *Holtschlag* by noting that, under the common law, all homicides committed with a *mens rea* of malice constituted murder. *Holtschlag, supra* at 5-6. Involuntary manslaughter was a "'catch-all concept including all manslaughter not characterized as voluntary: "Every unintentional killing of a human being is involuntary manslaughter if it is neither murder nor voluntary manslaughter nor within the scope of some recognized justification or excuse."'" *Id.* at 7, quoting *Datema*, *supra* at 594-595, quoting Perkins & Boyce, Criminal Law (3d ed), p 105. In other words, involuntary manslaughter is defined by what it is *not*-- if a homicide is not murder, voluntary

---

[3] See *People v Ryczek*, 224 Mich 106, 110; 194 NW 609 (1923) (defining involuntary manslaughter as "'the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty'") (citation omitted).

manslaughter,[4] or a justified killing, it must be involuntary manslaughter. The traditional definition of malice included the felony-murder rule, which held that when a homicide occurred during the commission of a felony, the intent to commit that felony by itself established the existence of malice. Therefore, a homicide that occurred during the commission of an unlawful act only fell within the "catch-all" concept of involuntary manslaughter if the unlawful act was *not* a felony. However, in *People v Aaron,* 409 Mich 672, 727-728; 299 NW2d 304 (1980), this Court abolished the traditional felony-murder rule, holding that a homicide that occurred during the commission of any unlawful act, including a felony, constitutes murder only if the prosecutor demonstrates the existence of a *mens rea* of malice. Because a homicide that occurs during the commission of a felony is no longer murder per se, this Court concluded that the scope of the "catch-all" concept of involuntary manslaughter must necessarily encompass a homicide that occurred during the commission of a felony where the defendant acted with a lesser *mens rea*. In other words, the appropriate question to be asked to distinguish murder from involuntary manslaughter, post-*Aaron,* is whether the

---

[4] Common-law voluntary manslaughter occurs when "'the act of killing, though intentional, [is] committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement, by which the control of reason was disturbed, rather than of any wickedness of heart or cruelty or recklessness of disposition . . . .'" *Mendoza, supra* at 535, quoting *Maher v People*, 10 Mich 212, 219 (1862).

6

homicide was committed with malice. If the homicide was committed with malice, it is murder. If the homicide was not committed with a *mens rea* of malice, and is neither legally justifiable nor voluntary manslaughter, then it *must* be involuntary manslaughter. *Holtschlag, supra* at 11-12.

At first blush, it would appear that statutory involuntary manslaughter is not a necessarily included lesser offense of second-degree murder. The elements of second-degree murder are: (1) a death; (2) caused by the defendant's act; (3) with malice; and (4) without justification. *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). The elements of statutory involuntary manslaughter are: (1) a death; (2) caused by the defendant; (3) without lawful justification or excuse; (4) resulting from the discharge of a firearm; (5) at the time of the discharge, the defendant was pointing or aiming the firearm at the deceased; and (6) defendant intended to point or aim the firearm at the deceased. *People v Heflin,* 434 Mich 482, 497; 456 NW2d 10 (1990). As correctly noted by the majority, statutory involuntary manslaughter requires proof of an element not required for second-degree murder-- namely that the defendant intentionally pointed or aimed a firearm at the victim. Because of this, the majority concludes that the elements of statutory involuntary manslaughter are not completely subsumed by the elements

7

of second-degree murder, and thus the former is a cognate lesser offense and may not be considered by the jury. *Cornell, supra.*[5]

In my judgment, the majority misperceives the relationship between statutory and common-law manslaughter. According to the majority, when the Legislature enacted the statute, it created a separate and distinct crime of manslaughter. That is, statutory manslaughter represents a departure from the common-law understanding of manslaughter and, therefore, the only relationship between the two is in name. Because statutory manslaughter exists outside the realm of the common law, the usual common-law relationship between murder and manslaughter is inapplicable.

But the majority's conclusion fails to give sufficient regard to the language and context of the statute. MCL 750.329(1) defines the act of intentionally aiming or pointing a firearm at another and, without malice, discharging that firearm and causing the victim's death as "manslaughter." Yet, the latter term is nowhere defined by the statute. However, the term "manslaughter" in the general

---

[5] The majority also cites for support this Court's conclusion in *Heflin,* that statutory involuntary manslaughter is a cognate lesser offense of murder. *Ante* at 9. However, I find *Heflin* to be of dubious value in this regard, because the opinion also concluded that common-law involuntary manslaughter was a cognate lesser offense of murder, a holding that was later overruled by *Mendoza.* In addition, at the time *Heflin* was decided, the distinction between cognate and lesser included offenses was far less relevant, given the Court's then-existing precedent holding that MCL 768.32(1) applied equally to cognate and necessarily included lesser offenses. See *Cornell, supra.*

manslaughter statute, MCL 750.321,[6] *has* been interpreted and has always been understood to refer to common-law manslaughter. See, e.g., *Mendoza, supra*; *Holtschlag, supra.* Because this common-law term is not defined in MCL 750.329(1), it should be interpreted in a manner consistent with how it has been interpreted and understood in the general manslaughter statute, absent evidence that the Legislature intended to alter or repeal that common-law definition.

This Court has held that where "a statute dealing with the same subject invokes a common-law term, and where there is no clear legislative intent to alter the common law, this Court will interpret the statute as having the same meaning as under the common law." *Ford Motor Co v Woodhaven*, 475 Mich 425, 439; 716 NW2d 247 (2006), citing *Pulver v Dundee Cement Co*, 445 Mich 68, 75; 515 NW2d 728 (1994). Neither the majority nor the parties in this case have asserted that the Legislature intended to replace the common-law definition of "manslaughter" for the purposes of MCL 750.329(1). Nor could such an argument be reasonably made because, while the Legislature *could* alter the common law, it has not done so in the instant context. Nothing in the language of either MCL 750.329(1) or the general manslaughter statute demonstrates any legislative intent, clear or otherwise, to alter or abrogate the common law. Accordingly, in the

---

[6] MCL 750.321 states:

Manslaughter--Any person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment

(continued…)

absence of such intent, the term "manslaughter" set forth in MCL 750.329(1) should be construed and understood consistently with the common-law meaning of the term.

Once the premise that statutory manslaughter does not displace common-law manslaughter becomes accepted, the majority's determination that statutory manslaughter operates outside the context of the common law becomes untenable. The statutory *form* of manslaughter at issue in this case does not independently define the term "manslaughter," nor does it set forth a separate and distinct term of imprisonment.[7] Rather, it merely sets forth one specific form of manslaughter. Thus, when the Legislature defined the criminal act set forth in MCL 750.329(1) as "manslaughter," it incorporated that criminal act into the general manslaughter statute and its 15-year maximum term of imprisonment. Just as the term "manslaughter" in the statute should be construed and understood in a manner consistent with the general manslaughter statute, it should also be understood to define the criminal act set forth in the statute as *part* of the general manslaughter statute. In other words, statutory manslaughter is a specific instance of the general

(…continued)
in the state prison, not more than 15 years or by fine of not more than 7,500 dollars, or both, at the discretion of the court.

[7] Just as in MCL 750.329(1), other forms of statutory manslaughter do not set forth separate and distinct terms of imprisonment. See, e.g., the willful killing of an unborn quick child by means of an assault on the mother, MCL 750.322, and the killing of an unborn quick child or mother "from use of medicine, etc., with intent to destroy such child," MCL 750.323.

10

crime of manslaughter set forth in MCL 750.321 and is subject to the same prison term as any other form of manslaughter recognized at common law. On the basis of that understanding, I believe that statutory manslaughter under MCL 750.329(1) is simply one form of manslaughter recognized in this state and, therefore, is subject to the 15-year maximum term set forth in MCL 750.321.

The remaining question then is how MCL 750.329(1) fits within the common-law definition of manslaughter. In *Holtschlag, supra* at 21, this Court held that "[i]f a homicide is not voluntary manslaughter or excused or justified, it is, generally, either murder or involuntary manslaughter." The language of MCL 750.329(1) makes clear that a homicide committed by a defendant who intentionally points or aims a firearm at a victim is not excused or justified. Further, the statute only applies to circumstances in which the defendant commits the homicide *lacking* a *mens rea* of malice. Because a violation of MCL 750.329(1) cannot be voluntary manslaughter or murder, and is not excused or justified, it must necessarily be considered involuntary manslaughter. In other words, the statute is merely one instance of the more general crime of common-law involuntary manslaughter. Because this crime is a necessarily included lesser offense of second-degree murder, *Mendoza, supra,* the specific *type* of involuntary manslaughter created by the statute must also be a necessarily included lesser offense of second-degree murder. Further, if a defendant is charged with second-degree murder, and the offense was committed with a firearm, the charge necessarily includes all the elements of MCL 750.329(1). Just as the defendants in

11

*Holtschlag* who committed a homicide that occurred during the commission of a felony, but lacking malice, were properly convicted of common-law involuntary manslaughter, the defendant in the instant case who claimed that he committed a homicide while intentionally pointing or aiming a firearm at the victim, but lacking malice, was entitled to an instruction on a specific form of common-law involuntary manslaughter, i.e., statutory involuntary manslaughter. Accordingly, I believe that the trial court erred by not giving the requested jury instruction.

While the trial court erred by failing to give the jury instruction, the error was harmless, in my judgment, because the jury *was*, in fact, instructed on common-law involuntary manslaughter and rejected that offense. In cases of nonconstitutional preserved error, the defendant must show that it is more probable than not that the failure to give the requested instruction undermined the reliability of the verdict. *People v Lukity,* 460 Mich 484, 495-496; 596 NW2d 607 (1999). Here, the jury was instructed both on second-degree murder and on common-law involuntary manslaughter. As noted above, *Holtschlag* establishes that a homicide committed without malice is involuntary manslaughter. MCL 750.329(1) only applies where the defendant intentionally points or aims a firearm at the victim without malice. By convicting defendant of second-degree murder, the jury necessarily determined that defendant acted with the *mens rea* of malice when he shot the victim. Had the jury concluded that defendant did *not* commit the instant homicide with the *mens rea* of malice, it would have either convicted defendant of common-law involuntary manslaughter or acquitted him. Therefore,

defendant cannot demonstrate that, had the jury been instructed on a *statutory* form of involuntary manslaughter, it would have determined that defendant lacked the *mens rea* of malice. See, e.g., *People v Gillis*, 474 Mich 105, 140 n 18; 712 NW2d 419 (2006) (noting that "[g]iven the jury's refusal to either acquit or convict of the lesser offense [of second-degree murder], defendant has failed to demonstrate that a 'miscarriage of justice' occurred when the trial court failed to instruct on involuntary manslaughter").

In conclusion, the Legislature's use of the term "manslaughter" to define the criminal act set forth in MCL 750.329(1) indicates that the statute has defined a particular form of common-law manslaughter. *Holtschlag* recognized that the sole relevant question in determining whether a homicide is murder or common-law involuntary manslaughter is whether the homicide was committed with malice. Where a defendant acts with a *mens rea* of malice, it is murder. Where a defendant acts with a lesser *mens rea*, and the homicide is not voluntary manslaughter or excused or justified, then it is common-law involuntary manslaughter. Thus, common-law involuntary manslaughter is a catch-all offense that encompasses *all* homicides committed without a *mens rea* of malice that are not either legally justified or voluntary manslaughter. By its own terms, MCL 750.329(1) applies only to homicides committed with a firearm, but without a *mens rea* of malice and under circumstances that are neither legally justified nor compose the elements of voluntary manslaughter. Just as this distinction required the Court in *Holtschlag* to find that a defendant who committed a homicide during

13

a felony could be convicted of involuntary manslaughter, I believe that it requires the Court in this case to hold that defendant was entitled to an instruction on statutory involuntary manslaughter.

However, given that the jury refused either to convict defendant of common-law involuntary manslaughter or to acquit him, it necessarily concluded that defendant committed the instant homicide with a *mens rea* of malice. Therefore, I conclude that the trial court's failure to instruct the jury on statutory involuntary manslaughter was harmless error. Accordingly, I agree with the result reached by the majority and would reverse the judgment of the Court of Appeals and remand this case to the trial court to reinstate defendant's convictions of second-degree murder and felony-firearm.

Stephen J. Markman

14

S T A T E   O F   M I C H I G A N

SUPREME COURT


PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant/Cross-
       Appellee,

v                                      No. 130245

RANDY R. SMITH,

       Defendant-Appellee/Cross-
       Appellant.

_____

CAVANAGH, J. (*dissenting*).

I agree with the majority that *People v Mendoza,* 468 Mich 527; 664 NW2d 685 (2003), is not inconsistent with *People v Cornell,* 466 Mich 335; 646 NW2d 127 (2002), because *Mendoza*'s holding only concerned common-law manslaughter. Additionally, I do not question the accuracy of the majority's comparison of the elements of second-degree murder, MCL 750.317, and statutory involuntary manslaughter, MCL 750.329. Nevertheless, I dissent from the continued application of *Cornell*, which permits jury instructions only on necessarily included lesser offenses of a charged offense. I reiterate my belief that *Cornell*'s construction of MCL 768.32 misinterprets the statute's plain language and contravenes this Court's precedent. See *Mendoza*, *supra* at 549-555 (Cavanagh, J., concurring). I maintain that the proper interpretation of MCL

750.329 allows instructions on lesser or "inferior" offenses of the crime charged if such instructions are supported by the evidence.

The evidence presented at defendant's trial would have supported an instruction on statutory involuntary manslaughter. The defense approach was to admit that defendant caused the fatality but dispute the element of intent. There was sufficient evidence for the jury to find that defendant had intentionally aimed a gun at the decedent, yet had shot her without malice. But without an instruction on statutory involuntary manslaughter, the jury did not have the option to return such a verdict. Accordingly, I would grant defendant a new trial in which the requested instructions are given to the jury.

Michael F. Cavanagh
Marilyn Kelly