MARKMAN, J.
(concurring in the result only). The majority concludes that defendant was not entitled to *75 an instruction on statutory involuntary manslaughter, MCL 750.329(1), on the basis that statutory involuntary manslaughter is not an “inferior” offense of second-degree murder under MCL 768.32(1). I respectfully disagree. In People v Holtschlag, 471 Mich 1; 684 NW2d 730 (2004), this Court concluded that common-law involuntary manslaughter is a catch-all offense that encompasses all homicides committed without a mens rea of malice that are not either legally justified or voluntary manslaughter. Just as this distinction required the Court in Holtschlag to find that a defendant who committed a homicide during a felony could be convicted of involuntary manslaughter, I believe that it requires the Court in this case to find that defendant was entitled to an instruction on statutory involuntary manslaughter. However, in this case the jury convicted defendant of second-degree murder and rejected the lesser offense of common-law involuntary manslaughter. Because the jury concluded that defendant committed the instant homicide possessing a mens rea of malice, I believe that the trial court’s failure to instruct the jury on statutory involuntary manslaughter was harmless error. Accordingly, I agree with the result reached by the majority and would reverse the judgment of the Court of Appeals and remand this case to the trial court to reinstate defendant’s convictions of second-degree murder and possession of a firearm during the commission of a felony.
Defendant shot and killed a 16-year-old girl who was visiting his home. Defendant was charged with second-degree murder and felony-firearm. The trial court instructed the jury on common-law involuntary manslaughter, but denied defendant’s request for an instruction on statutory involuntary manslaughter, MCL 750.329(1). Defendant was convicted by the jury of second-degree murder and felony-firearm. The Court *76 of Appeals reversed the judgment of conviction and remanded for a new trial because the trial court erred in failing to instruct the jury on statutory involuntary manslaughter.
MCL 750.329(1) and MCL 768.32(1) state respectively:
A person who wounds, maims, or injures another person by discharging a firearm that is pointed or aimed intentionally but without malice at another person is guilty of manslaughter if the wounds, maiming, or injuries result in death.
Except as provided in subsection (2),[1] upon an indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense.
Therefore, defendant is only entitled to an instruction on statutory involuntary manslaughter if that crime can be considered an “offense inferior to that charged in the indictment [i.e., second-degree murder].” In People v Cornell, 466 Mich 335, 354; 646 NW2d 127 (2002), this Court defined the language “offense inferior to that charged in the indictment” as an “ ‘offense [that] can be proved by the same facts that are used to establish the charged offense.’ ” (Citation omitted.) In other words, for crimes not formally divided into degrees, a defendant can be convicted of either the charged offense or a necessarily included lesser offense of the charged offense. This Court further concluded that, in order for a *77 defendant to be entitled to an instruction on a necessarily included lesser offense, it must be supported by a “rational view of the evidence ....” Id. at 357.
Common-law involuntary manslaughter is a necessarily included lesser offense of second-degree murder. People v Mendoza, 468 Mich 527, 534; 664 NW2d 685 (2003). Under the common law, “the presence of malice became both synonymous with the absence of mitigating circumstances and the sole element distinguishing murder from manslaughter.” Id. at 540. Therefore, this Court concluded:
Regarding involuntary manslaughter, the lack of malice is evidenced by involuntary manslaughter’s diminished mens rea, which is included in murder’s greater mens rea. See People v Datema, 448 Mich 585, 606; 533 NW2d 272 (1995), stating:
“ ‘[Plains should be taken not to define [the mens rea required for involuntary manslaughter] in terms of a wanton and wilful disregard of a harmful consequence known to be likely to result, because such a state of mind goes beyond negligence and comes under the head of malice.’
“Unlike murder, involuntary manslaughter contemplates an unintended result and thus requires something less than an intent to do great bodily harm, an intent to kill, or the wanton and wilful disregard of its natural consequences. [Citations omitted; emphasis added.]”
See also United States v Browner, 889 F2d 549, 553 (CA 5, 1989), stating, “In contrast to the case of voluntary manslaughter. .. the absence of malice in involuntary manslaughter arises not because of provocation induced passion, but rather because the offender’s mental state is not sufficiently culpable to reach the traditional malice requirements.”
Thus, we conclude that the elements of involuntary manslaughter are included in the offense of murder be *78 cause involuntary manslaughter’s mens rea is included in murder’s greater mens rea. [Id. at 540-541 (emphasis omitted).]
This Court came to a similar conclusion in Holtschlag, supra. In Holtschlag, the defendants were convicted of involuntary manslaughter after placing gamma hydroxybutyric acid (GHB)[2] in the drink of a 14-year-old girl who subsequently became sick and died. The defendants argued that they could not be convicted of involuntary manslaughter under these facts, because involuntary manslaughter had been defined, in part, as a homicide that occurs during the commission of an unlawful act that is not a felony.[3] Because the act of placing GHB in an unsuspecting person’s drink is a felony, the defendants argued that they could not have committed involuntary manslaughter.
This Court undertook its analysis in Holtschlag by noting that, under the common law, all homicides committed with a mens rea of malice constituted murder. Holtschlag, supra at 5-6. Involuntary manslaughter was a “ ‘catch-all concept including all manslaughter not characterized as voluntary: “Every unintentional killing of a human being is involuntary manslaughter if it is neither murder nor voluntary manslaughter nor within the scope of some recognized justification or excuse.” ’ ” Id. at 7, quoting Datema, supra at 594-595, quoting Perkins & Boyce, Criminal Law (3d ed), p 105. In other words, involuntary manslaughter is defined by what it is not — if a homicide is not murder, voluntary *79 manslaughter,[4] or a justified killing, it must be involuntary manslaughter. The traditional definition of malice included the felony-murder rule, which held that when a homicide occurred during the commission of a felony, the intent to commit that felony by itself established the existence of malice. Therefore, a homicide that occurred during the commission of an unlawful act only fell within the “catch-all” concept of involuntary manslaughter if the unlawful act was not a felony. However, in People v Aaron, 409 Mich 672, 727-728; 299 NW2d 304 (1980), this Court abolished the traditional felony-murder rule, holding that a homicide that occurred during the commission of any unlawful act, including a felony, constitutes murder only if the prosecutor demonstrates the existence of a mens rea of malice. Because a homicide that occurs during the commission of a felony is no longer murder per se, this Court concluded that the scope of the “catch-all” concept of involuntary manslaughter must necessarily encompass a homicide that occurred during the commission of a felony where the defendant acted with a lesser mens rea. In other words, the appropriate question to be asked to distinguish murder from involuntary manslaughter, post-Aaron, is whether the homicide was committed with malice. If the homicide was committed with malice, it is murder. If the homicide was not committed with a mens rea of malice, and is neither legally justifiable nor voluntary manslaughter, then it must be involuntary manslaughter. Holtschlag, supra at 11-12.
*80 At first blush, it would appear that statutory involuntary manslaughter is not a necessarily included lesser offense of second-degree murder. The elements of second-degree murder are: (1) a death; (2) caused by the defendant’s act; (3) with malice; and (4) without justification. People v Goecke, 457 Mich 442, 464; 579 NW2d 868 (1998). The elements of statutory involuntary manslaughter are: (1) a death; (2) caused by the defendant; (3) without lawful justification or excuse; (4) resulting from the discharge of a firearm; (5) at the time of the discharge, the defendant was pointing or aiming the firearm at the deceased; and (6) defendant intended to point or aim the firearm at the deceased. People v Heflin, 434 Mich 482, 497; 456 NW2d 10 (1990). As correctly noted by the majority, statutory involuntary manslaughter requires proof of an element not required for second-degree murder — namely that the defendant intentionally pointed or aimed a firearm at the victim. Because of this, the majority concludes that the elements of statutory involuntary manslaughter are not completely subsumed by the elements of second-degree murder, and thus the former is a cognate lesser offense and may not be considered by the jury. Cornell, supra.[5]
In my judgment, the majority misperceives the relationship between statutory and common-law manslaughter. According to the majority, when the Legislature enacted the statute, it created a separate and *81 distinct crime of manslaughter. That is, statutory manslaughter represents a departure from the common-law understanding of manslaughter and, therefore, the only relationship between the two is in name. Because statutory manslaughter exists outside the realm of the common law, the usual common-law relationship between murder and manslaughter is inapplicable.
But the majority’s conclusion fails to give sufficient regard to the language and context of the statute. MCL 750.329(1) defines the act of intentionally aiming or pointing a firearm at another and, without malice, discharging that firearm and causing the victim’s death as “manslaughter.” Yet, the latter term is nowhere defined by the statute. However, the term “manslaughter” in the general manslaughter statute, MCL 750.321,[6] has been interpreted and has always been understood to refer to common-law manslaughter. See, e.g., Mendoza, supra; Holtschlag, supra. Because this common-law term is not defined in MCL 750.329(1), it should be interpreted in a manner consistent with how it has been interpreted and understood in the general manslaughter statute, absent evidence that the Legislature intended to alter or repeal that common-law definition.
This Court has held that where “a statute dealing with the same subject invokes a common-law term, and where there is no clear legislative intent to alter the common law, this Court will interpret the statute as having the same meaning as under the common law.” Ford Motor Co v Woodhaven, 475 Mich 425, 439; 716 *82 NW2d 247 (2006), citing Pulver v Dundee Cement Co, 445 Mich 68, 75; 515 NW2d 728 (1994). Neither the majority nor the parties in this case have asserted that the Legislature intended to replace the common-law definition of “manslaughter” for the purposes of MCL 750.329(1). Nor could such an argument be reasonably made because, while the Legislature could alter the common law, it has not done so in the instant context. Nothing in the language of either MCL 750.329(1) or the general manslaughter statute demonstrates any legislative intent, clear or otherwise, to alter or abrogate the common law. Accordingly, in the absence of such intent, the term “manslaughter” set forth in MCL 750.329(1) should be construed and understood consistently with the common-law meaning of the term.
Once the premise that statutory manslaughter does not displace common-law manslaughter becomes accepted, the majority’s determination that statutory manslaughter operates outside the context of the common law becomes untenable. The statutory form of manslaughter at issue in this case does not independently define the term “manslaughter,” nor does it set forth a separate and distinct term of imprisonment.[7] Rather, it merely sets forth one specific form of manslaughter. Thus, when the Legislature defined the criminal act set forth in MCL 750.329(1) as “manslaughter,” it incorporated that criminal act into the general manslaughter statute and its 15-year maximum term of imprisonment. Just as the term “manslaugh *83 ter” in the statute should be construed and understood in a manner consistent with the general manslaughter statute, it should also be understood to define the criminal act set forth in the statute as part of the general manslaughter statute. In other words, statutory manslaughter is a specific instance of the general crime of manslaughter set forth in MCL 750.321 and is subject to the same prison term as any other form of manslaughter recognized at common law. On the basis of that understanding, I believe that statutory manslaughter under MCL 750.329(1) is simply one form of manslaughter recognized in this state and, therefore, is subject to the 15-year maximum term set forth in MCL 750.321.
The remaining question then is how MCL 750.329(1) fits within the common-law definition of manslaughter. In Holtschlag, supra at 21, this Court held that “[i]f a homicide is not voluntary manslaughter or excused or justified, it is, generally, either murder or involuntary manslaughter.” The language of MCL 750.329(1) makes clear that a homicide committed by a defendant who intentionally points or aims a firearm at a victim is not excused or justified. Further, the statute only applies to circumstances in which the defendant commits the homicide lacking a mens rea of malice. Because a violation of MCL 750.329(1) cannot be voluntary manslaughter or murder, and is not excused or justified, it must necessarily be considered involuntary manslaughter. In other words, the statute is merely one instance of the more general crime of common-law involuntary manslaughter. Because this crime is a necessarily included lesser offense of second-degree murder, Mendoza, supra, the specific type of involuntary manslaughter created by the statute must also be a necessarily included lesser offense of second-degree murder. Further, if a defendant is charged with second-degree *84 murder, and the offense was committed with a firearm, the charge necessarily includes all the elements of MCL 750.329(1). Just as the defendants in Holtschlag who committed a homicide that occurred during the commission of a felony, hut lacking malice, were properly convicted of common-law involuntary manslaughter, the defendant in the instant case who claimed that he committed a homicide while intentionally pointing or aiming a firearm at the victim, but lacking malice, was entitled to an instruction on a specific form of common-law involuntary manslaughter, i.e., statutory involuntary manslaughter. Accordingly, I believe that the trial court erred by not giving the requested jury instruction.
While the trial court erred by failing to give the jury instruction, the error was harmless, in my judgment, because the jury was, in fact, instructed on common-law involuntary manslaughter and rejected that offense. In cases of nonconstitutional preserved error, the defendant must show that it is more probable than not that the failure to give the requested instruction undermined the reliability of the verdict. People v Lukity, 460 Mich 484, 495-496; 596 NW2d 607 (1999). Here, the jury was instructed both on second-degree murder and on common-law involuntary manslaughter. As noted above, Holtschlag establishes that a homicide committed without malice is involuntary manslaughter. MCL 750.329(1) only applies where the defendant intentionally points or aims a firearm at the victim without malice. By convicting defendant of second-degree murder, the jury necessarily determined that defendant acted with the mens rea of malice when he shot the victim. Had the jury concluded that defendant did not commit the instant homicide with the mens rea of malice, it would have either convicted defendant of common-law involuntary manslaughter or acquitted him. Therefore, defendant cannot demonstrate that, *85 had the jury been instructed on a statutory form of involuntary manslaughter, it would have determined that defendant lacked the mens rea of malice. See, e.g., People v Gillis, 474 Mich 105, 140 n 18; 712 NW2d 419 (2006) (noting that “[g]iven the jury’s refusal to either acquit or convict of the lesser offense [of second-degree murder], defendant has failed to demonstrate that a ‘miscarriage of justice’ occurred when the trial court failed to instruct on involuntary manslaughter”).
In conclusion, the Legislature’s use of the term “manslaughter” to define the criminal act set forth in MCL 750.329(1) indicates that the statute has defined a particular form of common-law manslaughter. Holtschlag recognized that the sole relevant question in determining whether a homicide is murder or common-law involuntary manslaughter is whether the homicide was committed with malice. Where a defendant acts with a mens rea of malice, it is murder. Where a defendant acts with a lesser mens rea, and the homicide is not voluntary manslaughter or excused or justified, then it is common-law involuntary manslaughter. Thus, common-law involuntary manslaughter is a catch-all offense that encompasses all homicides committed without a mens rea of malice that are not either legally justified or voluntary manslaughter. By its own terms, MCL 750.329(1) applies only to homicides committed with a firearm, but without a mens rea of malice and under circumstances that are neither legally justified nor compose the elements of voluntary manslaughter. Just as this distinction required the Court in Holtschlag to find that a defendant who committed a homicide during a felony could be convicted of involuntary manslaughter, I believe that it requires the Court in this case to hold that defendant was entitled to an instruction on statutory involuntary manslaughter.
*86 However, given that the jury refused either to convict defendant of common-law involuntary manslaughter or to acquit him, it necessarily concluded that defendant committed the instant homicide with a mens rea of malice. Therefore, I conclude that the trial court’s failure to instruct the jury on statutory involuntary manslaughter was harmless error. Accordingly, I agree with the result reached by the majority and would reverse the judgment of the Court of Appeals and remand this case to the trial court to reinstate defendant’s convictions of second-degree murder and felony-firearm.

1 The provisions in subsection 2 do not apply in this case.

 GHB is sometimes known as the “date rape drug.”

 See People v Ryczek, 224 Mich 106, 110; 194 NW 609 (1923) (defining involuntary manslaughter as “ ‘the lolling of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty’ ”) (citation omitted).

 Common-law voluntary manslaughter occurs when “ ‘the act of killing, though intentional, [is] committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement, by which the control of reason was disturbed, rather than of any wickedness of heart or cruelty or recklessness of disposition Mendoza, supra at 535, quoting Maher v People, 10 Mich 212, 219 (1862).

 The majority also cites for support this Court’s conclusion in Heflin, that statutory involuntary manslaughter is a cognate lesser offense of murder. Ante at 73. However, I find Heflin to be of dubious value in this regard, because the opinion also concluded that common-law involuntary manslaughter was a cognate lesser offense of murder, a holding that was later overruled by Mendoza. In addition, at the time Heflin was decided, the distinction between cognate and lesser included offenses was far less relevant, given the Court’s then-existing precedent holding that MCL 768.32(1) applied equally to cognate and necessarily included lesser offenses. See Cornell, supra.

 MCL 750.321 states:
Manslaughter — Any person who shall commit the crime of manslaughter shall he guilty of a felony punishable by imprisonment in the state prison, not more than 15 years or by fine of not more than 7,500 dollars, or both, at the discretion of the court.

 Just as in MCL 750.329(1), other forms of statutory manslaughter do not set forth separate and distinct terms of imprisonment. See, e.g., the willful killing of an unborn quick child by means of an assault on the mother, MCL 750.322, and the killing of an unborn quick child or mother “from use of medicine, etc., with intent to destroy such child,” MCL 750.323.